**David Hung MA, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 04SC570.**

Supreme Court of Colorado, En Banc.

Oct. 11, 2005.

---

David S. Kaplan, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, for Petitioner.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Respondent.

BENDER, Justice.

## I. Introduction

In this appeal we construe the term "law enforcement agency" as it is used in section 16–10–103(1)(k), C.R.S. (2005), which requires a trial court in a criminal case to grant a challenge for cause to a prospective juror who is a compensated employee of a public law enforcement agency.[1] We review the court of appeals' decision in *People v. Ma,* 104 P.3d 273 (Colo.App.2004), which held that the trial court properly denied Ma's chal-

lenge for cause to a prospective juror who is an Army military police reservist and affirmed Ma's criminal convictions for criminal mischief and menacing. It reasoned that the Army Military Police Corps is a subdivision of the Department of Defense, which is not a law enforcement agency.

We construe the term "law enforcement agency" to mean a police-like division or subdivision of government that has the authority to investigate crimes and to arrest, to prosecute, or to detain suspected criminals. The common definition of the word "agency" is a division or subdivision of government. The common understanding of the phrase "law enforcement" is the detection and punishment of criminal violations of the law by the police or other police-like agencies. The Army Military Police Corps is a subdivision of government that detects and punishes criminal violations of the law by performing police-like functions such as arresting suspected criminals, investigating crimes, and detaining prisoners. Hence, we hold that the Army Military Police Corps is a law enforcement agency for the purpose of section 16–10–103(1)(k).

Under the facts presented here, we hold that the trial court should have granted Ma's challenge for cause. For these reasons, we reverse the judgment of the court of appeals and return this case to that court with instructions to remand it to the trial court for a new trial.

## II. Facts and Proceedings Below

During jury selection, the trial court asked whether any of the prospective jurors was an employee of a law enforcement agency. One prospective juror told the trial court that he serves as a platoon leader in the Army Military Police Reserves. He explained that he works one weekend a month and participates in military police combat and site security missions.

The trial court then called counsel to the bench and stated, "Just when you think the

---

**1.** In its entirety, section 16–10–103(1)(k) provides:

(1) The court shall sustain a challenge for cause on one or more of the following grounds:

(k) The juror is a compensated employee of a public law enforcement agency or a public defender's office.

phrase 'law enforcement agency' is clear, the world intrudes on your language." The trial court then asked if either party wanted to challenge the prospective juror for cause. In response to this question, the prosecutor said, "I don't at this point." And, defense counsel replied, "I don't."

Later, the trial court asked the prospective juror whether he had ever testified in court. The prospective juror explained that he had testified as a military police officer in cases involving petty theft, drunk and disorderly conduct, and domestic disputes. When it was the defense's turn to question the prospective juror, defense counsel clarified that the prospective juror was a military police officer who had testified in a police capacity in criminal cases like this one. Defense counsel then challenged the prospective juror for cause under section 16–10–103(1)(k).

The trial court denied the challenge, ruling that defense counsel had waived Ma's right to make such a challenge when he first declined the opportunity to do so.[2] As a result of that ruling, defense counsel used one of

Ma's peremptory challenges to excuse the prospective juror and ultimately exercised all of Ma's peremptory challenges. The jury found Ma guilty of criminal mischief and menacing.

On appeal, the court of appeals held that the trial court properly denied Ma's challenge for cause. *Ma*, 104 P.3d at 277–78. But instead of concluding, as the trial court had, that defense counsel waived Ma's right to make the challenge, the court of appeals concluded that such a challenge was invalid. *Id.* It reasoned that the prospective juror was not within the reach of section 16–10–103(1)(k) because the Army Military Police Corps is not a law enforcement agency, but rather is a subdivision of the Department of Defense, which is not a law enforcement agency. *Id.*

We granted Ma's petition for certiorari on the question of whether the trial court should have granted Ma's challenge for cause in order to address the particular issue of what the term "law enforcement agency" means as it is used in section 16–10–103(1)(k).[3]

**2.** The complete colloquy between the trial court and counsel appears as follows in the trial record:

[DEFENSE COUNSEL]: Judge, I challenge [the prospective juror] for statutory cause. I know we talked about this, and I don't think there's exact case law, but the statute says if he's a compensated employee of a public law enforcement agency, which he exactly is. He works for a public agency, the United States government, as a police officer. There's nothing in the statute or anything in the case law that says full time or part time. He's a police officer, and I would challenge him pursuant to 16–10–103.

[PROSECUTOR]: Judge, I don't think he comes within that statute. And I know that we've been through this before, and the law is unclear, just like the Court said, just when we thought that we were being clear about what law enforcement is. He is more of a military man than law enforcement.

[TRIAL COURT]: Let me tell you what my concern is. I thought what I intended to be doing when I asked you to approach the bench when [the prospective juror] first said that he was a reservist and was an MP in the reserve was to find out from either of you whether you had a challenge for cause based on his status. What both of you said was, 'We don't have a challenge at this time.' I took that to mean you don't have a challenge based on what you've heard so far but that you obviously wanted to keep your options open in case he

said something that would disqualify him for other reasons. So I have concerns about whether this challenge has not been waived. And maybe we just had a miscommunication, but the last thing I wanted to do was to have [the prospective juror] sit around here for five hours and then find out from defense counsel that they now think an MP in the reserves is a member of a law enforcement agency.

[DEFENSE COUNSEL]: Well, Judge, I'd ask the Court to read the record, back because I know that that is what [the prosecutor] said. I'm not sure what I said, but I don't think I said that. That was not my understanding.

[TRIAL COURT]: Well, did you say you had a challenge for cause to [the prospective juror]?

[DEFENSE COUNSEL]: To be honest, I can't remember exactly what I said. I think the record can speak for itself.

[TRIAL COURT]: Well, you didn't raise the challenge for cause, did you? And I don't care about the exact language that was used. I brought you up here [earlier] to find out if either of you had a challenge for cause to [the prospective juror] based on his status as an MP, and neither of you did.... The challenge is denied as waived.

**3.** We granted certiorari on the following question:

Whether the court of appeals erroneously concluded that the trial court properly denied Mr. Ma's statutory challenge for cause to a juror

## III.  Analysis

### A.  Waiver of the Challenge for Cause

■  As a threshold matter, we address whether defense counsel waived Ma's right to challenge the prospective juror for cause by declining an initial opportunity to do so.

Ma maintains that defense counsel was uninformed and unaware that his initial refusal to challenge the prospective juror would preclude him from making such a challenge after further questioning.  In contrast, the People argue that defense counsel waived Ma's right to make the challenge by failing to pursue the matter when the grounds for making the challenge were first raised.

■  A challenge for cause is waived if counsel fails to use reasonable diligence during jury selection to determine whether the grounds for such a challenge exist.  *People v. Lewis,* 180 Colo. 423, 428, 506 P.2d 125, 127 (1973).  The test for reasonable diligence is whether counsel took the opportunity to adequately question a prospective juror.  *Brown v. People,* 20 Colo. 161, 165, 36 P. 1040, 1042 (1894).

Although the determination that a waiver was valid is largely within the discretion of the trial court, *see People ex rel. Peters v. District Court,* 951 P.2d 926, 931 (Colo.1998), the record in this case lacks the information necessary for us to find a waiver.

After the prospective juror stated that he was an Army military police reservist, the trial court commented that the term "law enforcement agency" is unclear.  It then asked whether either party wanted to make a challenge for cause.  It did not ask if either party wanted to question the potential juror further.  Nor did it state that this was the parties' only chance to make such a challenge.

In response to the trial court's question, the prosecutor said that he did not want to make a challenge "at this time."  Defense counsel replied that he did not want to make a challenge either.  Eventually, when it was the defense's turn to question the prospective

juror, defense counsel asked him about his job as an Army military police reservist.  It was at that time that defense counsel challenged the prospective juror for cause.

It is clear that defense counsel initially declined the opportunity to challenge the prospective juror for cause.  It is unclear, however, that defense counsel's decision constituted a waiver.  When the grounds for making the challenge were first raised, defense counsel did not ask the prospective juror any questions.  But, when it was defense counsel's turn to question the prospective juror, defense counsel raised the issue again.

Because defense counsel eventually questioned the prospective juror regarding the grounds for making the challenge, we cannot conclude that defense counsel failed to use reasonable diligence unless the record is clear that defense counsel was aware that his initial opportunity to challenge the prospective juror would be his only opportunity to do so.  The record is unclear on this point.  Hence, we hold that the record is insufficient to support the conclusion that defense counsel waived Ma's right to challenge the prospective juror for cause under section 16–10–103(1)(k).

### B.  Merits of the Challenge for Cause

■  We next address the issue of whether the trial court should have granted Ma's challenge for cause to a prospective juror who is an Army military police reservist.

Ma argues that the Army Military Police Corps is a law enforcement agency because it is the law enforcement arm of the Army, just as a city's police department is the law enforcement arm of that city.  The People, on the other hand, contend that the Army Military Police Corps is not a law enforcement agency because it is a subdivision of the Department of Defense, which is not a law enforcement agency.

Before we begin our analysis of this issue, we note that the rationale underlying a challenge for cause to a compensated employee

that regularly testified as a military police officer in various cases, including "domestic situations," without addressing the propriety of the

trial court's finding that Mr. Ma waived the challenge.

of a public law enforcement agency is to ensure that the jury in a criminal case remains impartial in both fact and appearance. *People in the Interest of R.A.D.*, 196 Colo. 430, 432, 586 P.2d 46, 47 (1978); *see Tate v. People*, 125 Colo. 527, 538–540, 247 P.2d 665, 670–71 (1952). The concern is that one who is employed by a law enforcement agency will favor, or will be perceived to favor, the prosecution side of a criminal case. *People in the Interest of R.A.D.*, 196 Colo. at 432, 586 P.2d at 47.

■■ Because a criminal defendant has the constitutional right to a fair trial by an impartial jury, *see* U.S. Const. amend. VI; Colo. Const. art. II, § 16, a trial court in a criminal case must grant all valid challenges for cause, *see* § 16–10–103; *Carrillo v. People*, 974 P.2d 478, 486–87 (Colo.1999). Even so, a trial court's failure to grant a valid challenge for cause requires retrial only if the defendant used a peremptory challenge to excuse the prospective juror and then exercised all available peremptory challenges.[4] *Carrillo*, 974 P.2d at 486–87.

### 1. The Term "Law Enforcement Agency"

We now begin our analysis of this issue, which requires us to construe the definition of the term "law enforcement agency" as it is used in section 16–10–103(1)(k). Words and phrases are to be construed according to their common usage unless they have acquired a technical or particular meaning, whether by legislative definition or otherwise. § 2–4–101, C.R.S. (2004); *Binkley v. People*, 716 P.2d 1111, 1113 (Colo.1986).

The term "law enforcement agency" is not defined by section 16–10–103 or by any of the other statutes that govern jury selection and composition. *See* §§ 16–10–101 to 110, C.R.S. (2005). Therefore, we construe the term's meaning according to its common usage.

The word "agency" is defined as a "division of government." *American Heritage Dictio-*

*nary of the English Language* 32, (4th ed.2000).

■ The phrase "law enforcement" is defined as "the detection and punishment of violations of the law." *Black's Law Dictionary* 891 (7th ed.1999). Detecting and punishing violations of law is commonly understood to be the job of the police or other police-like agencies. *See American Heritage Dictionary of the English Language, supra* at 1358 (defining the word "police" as "the governmental department ... established to maintain order, enforce the law, and prevent and detect crime"). Police officers are responsible for enforcing criminal laws. They do this by investigating crimes, and arresting, detaining, and assisting in the prosecution of suspected criminals. *See, e.g.,* Denver Police Dep't, *Denver Police Dep't Operations Manual* (2004). Therefore, the common understanding of the phrase "law enforcement" conjures up images of police officers carrying out typical police functions in order to enforce criminal laws.

■ In the broadest sense, the phrase "law enforcement" means not only the enforcement of criminal laws but also the enforcement of civil regulations. *Black's Law Dictionary, supra* at 891. However, when a word can be defined in either a broad or a narrow sense, the definition that will best effectuate the General Assembly's intent should be applied. *Fifteenth St. Inv. Co. v. People*, 102 Colo. 571, 581, 81 P.2d 764, 769 (1938).

The broad meaning of the phrase "law enforcement" includes the enforcement of both criminal laws and civil regulations. But, to apply this meaning would enlarge the pool of dismissible jurors to a size that was not contemplated by the General Assembly. *See People v. Simon*, 100 P.3d 487, 491 (Colo. App.2004) (observing that the General Assembly did not intend for all employees of the EPA to be disqualified under the statute). The narrow meaning of the phrase "law enforcement" is limited to the enforcement of criminal laws. To apply this mean-

4. Of course, this does not preclude a defendant from obtaining a retrial where the trial court denies a valid challenge for cause after the defen- dant has used his available peremptory challenges.

ing would keep the pool of dismissible jurors to an appropriate size and would also achieve the General Assembly's goal of maintaining actual and apparent jury impartiality. *See People in Interest of R.A.D.*, 196 Colo. at 432, 586 P.2d at 47.

■ When we construe a statute, our goal is to ascertain and to give effect to the General Assembly's intent. *People v. Guenther*, 740 P.2d 971, 975 (Colo.1987). Thus, we construe the phrase "law enforcement" to mean the enforcement of criminal laws by the police or other police-like agencies.

In addition to reflecting the phrase's common definition and the General Assembly's intent, our construction of the phrase "law enforcement" finds support throughout Colorado statutory and case law. The statutes that define the term "law enforcement agency" also identify several types of law enforcement agencies, including: any police department, sheriff's department, or district attorney's office; the office of the state attorney general; the Colorado bureau of investigations; and the Colorado state patrol. §§ 8–47–203.3(2), 8–72–111(2), 24–50–127(2)(b), 26–1–114(3)(a)(III)(B), C.R.S. (2005) (statutes about state employee benefits and protections); § 42–5–201(6), C.R.S. (2005) (a statute about traffic regulations). Notably, each of these agencies enforces criminal laws, thus reinforcing the notion that the phrase "law enforcement" does not imply the enforcement of civil regulations.

In a number of cases, the court of appeals has held that agencies responsible for enforcing civil regulations are not law enforcement agencies for the purpose of section 16–10–103(1)(k). *See, e.g., People v. Zurenko*, 833 P.2d 794, 796 (Colo.App.1991) (Department of Social Services and Equal Employment Opportunity Commission); *People v. Topping*, 764 P.2d 369, 370 (Colo.App.1988) (State Department of Administration), *aff'd on other grounds*, 793 P.2d 1168 (Colo.1990); *People v. Urrutia*, 893 P.2d 1338, 1346 (Colo.App. 1994) (Department of Defense); *Simon*, 100 P.3d at 491 (Environmental Protection Agency); *cf. People v. Scott*, 41 Colo.App. 66, 583 P.2d 939, 941 (1978) (holding that the Department of Corrections is a law enforcement agency because some of the agency's personnel have the power to arrest); *People v. Maes*, 43 Colo.App. 365, 609 P.2d 1105, 1107 (1979) (holding that a challenge for cause to a mechanic in the Denver Police Department's garage should have been granted). Through these cases, the court of appeals has implicitly construed the phrase "law enforcement," contained in section 16–10–103(1)(k), to connote only the enforcement of criminal laws.

■ Combining the common meanings of the phrase "law enforcement" and the word "agency," we reason that the term "law enforcement agency" means a division of government that detects and punishes criminal violations of the law by performing police-like duties such as investigating crimes and arresting, prosecuting, or detaining suspected criminals. Put in a less cumbersome way, a law enforcement agency is a police-like division of government that has the authority to investigate crimes and to arrest, to prosecute, or to detain suspected criminals.

### 2. The Army Military Police Corps

Having construed what the term "law enforcement agency" means as it is used in section 16–10–103(1)(k), we turn to the specifics of this case and consider two questions: first, whether the Army Military Police Corps is an agency; and second, if so, whether it is a law enforcement agency.

■ As to the first question, the court of appeals determined that the Army Military Police Corps is not an agency in and of itself. *Ma*, 104 P.3d at 277–78. Because of this determination, the court of appeals did not analyze whether the Army Military Police Corps is a law enforcement agency, but instead analyzed whether the Department of Defense, which oversees the Army, is one. *Id.*

Contrary to the court of appeals, we see no reason why the Army Military Police Corps should not be considered an agency in and of itself. It is true that the Army Military Police Corps is a subdivision of the Army, which is overseen by the Department of Defense. *See* Dep't of the Army, Pamphlet 10–1, *Organization of the U.S. Army* 2, Fig. 1–1 (1994). And, it appears that the court of appeals correctly concluded that the Depart-

ment of Defense is not a law enforcement agency. *See Urrutia,* 893 P.2d at 1345–46; *Ma,* 104 P.3d at 277–78 (adopting the conclusion and reasoning of *Urrutia* ).

However, the common definition of the word "agency" is not bound by bureaucratic happenstance, and we should not construe the word so as to undermine the rationale behind section 16–10–103(1)(k). *See Guenther,* 740 P.2d at 975. An agency is a division of government, and a subdivision of government is, practically speaking, also a division of government. Thus, a subdivision of government is an agency for the purpose of section 16–10–103(1)(k), especially, in our view, when that subdivision is the law enforcement arm of a larger agency. In addition to being a subdivision of government, the Army Military Police Corps is the law enforcement branch of the Army. *See Organization of the U.S. Army, supra,* App. H: Branches of the Army, at 50. Hence, we conclude that the Army Military Police Corps is an agency.

As to the second question of whether the Army Military Police Corps is a law enforcement agency, the purpose of the Army Military Police Corps is to maintain law and order on Army military bases and installations by enforcing Army regulations and the Uniform Code of Military Justice. *See* Dep't of the Army, Pamphlet 600–3–31, *Branch Code 31—Military Police* (1987); Dep't of the Army, Field Manual No. 19–10, *Military Police: Law and Order Operations* (1987). To carry out that purpose, military police officers—including reservists—are trained and authorized to arrest suspected criminals, to investigate crimes, and to detain prisoners. *See id.* Like civilian police officers, military police officers wear police uniforms, are armed with weapons, and patrol in marked police cars. *See id.*

Because the duties and responsibilities of a military police officer are analogous to those of a civilian police officer, whose job it is to detect and punish violations of the criminal law, we conclude that the Army Military Police Corps, just like a civilian police department, embodies the common understanding of the phrase "law enforcement." Therefore, we hold that the Army Military Police

Corps is a law enforcement agency for the purpose of section 16–10–103(1)(k) and that an Army military police reservist is a compensated employee of a public law enforcement agency.

## IV. Application

Because Ma did not waive his right to make a challenge for cause to a prospective juror who told the court that he is an Army military police reservist, because the trial court should have granted this challenge, and because defense counsel used a peremptory challenge to excuse this prospective juror and subsequently exercised all of Ma's remaining peremptory challenges, we reverse Ma's conviction and order a new trial. The judgment of the court of appeals is reversed and the case is returned to that court with instructions to remand it to the trial court for retrial.

Justice COATS dissents, and Justice KOURLIS and Justice RICE join in the dissent.

Justice COATS, dissenting.

The majority reverses the defendant's domestic violence convictions for criminal mischief and menacing his wife, on the grounds that the trial court erred by forcing the defense to expend one of its peremptory challenges on a military police reservist, rather than simply removing him from the jury panel for cause. I respectfully dissent from that holding because I do not believe the trial court was obliged to permit the defendant to revisit the matter, once his counsel declined the court's invitation to challenge the venireman as a compensated employee of a public law-enforcement agency. Even if defense counsel had been entitled to challenge the prospective juror for cause as he did, however, I believe that the majority's conclusion is premised upon a misconstruction of controlling Colorado law and a fundamental misunderstanding of the organization and command structure of the United States Army.

Initially, the majority confuses a failure to object with an affirmative choice not to object, and in doing so I believe it unjustifiably

impedes a trial judge's ability to conduct proceedings in his own court. It is well-settled that trial courts necessarily retain great discretion regarding the conduct of trials, even where rules prescribe a typical or usual order. Although the statutes and rules of this jurisdiction specify the grounds upon which challenges for cause will lie, § 16–10–103(1), C.R.S. (2005), Crim. P. 24(b)(1), in contrast to peremptory challenges, they prescribe no manner or order for exercising those challenges. *Compare*, Crim. P. 24(b), *with* 24(d)(4). And even with regard to the exercise of peremptory challenges, the committee comments to Crim. P. 24 explain that the rule leaves much discretion with the trial court.

The trial court in this case made clear to both counsel from the outset its practice of dealing with juror qualifications and challenges for cause, prior to general questioning by counsel, in order to permit the dismissal of affected prospective jurors, without unnecessary inconvenience or delay. It therefore proceeded down the list of statutory challenges for cause, in sequence, requiring prospective jurors to respond affirmatively to any applicable ground. When the court asked whether any prospective juror was an employee of a law-enforcement agency or the public defender's office, as enumerated in § 16–10–103(1)(k), one member of the panel indicated that he served as a military police reservist; and in response to further questioning, indicated that he was a First Lieutenant and served one weekend a month as a platoon leader over MP's performing combat MP missions and site security missions. The court immediately inquired whether either party had a challenge for cause to this prospective juror, and without reservation or request for further clarification, each counsel responded that he did not. The court moved on to discuss hardship and other general grounds for which prospective jurors might be excused from service.

While evidence of a prospective juror's incompetency, disqualification, or prejudice must be offered and the matter resolved, before the jury is impaneled, *see* Crim. P. 24(b)(2), the rule does not otherwise address the exercise of a party's right to assert challenges for cause. In any event, any question concerning counsel's awareness of the grounds for a challenge or his duty to make himself aware of such grounds cannot be at issue in this case because the prospective juror's employment status was explicitly revealed to both court and counsel. Similarly, any question concerning a point in the proceedings beyond which counsel's failure to assert such a challenge might constitute a waiver is not presented here because the court expressly confronted both counsel as to this statutory ground and both affirmatively declared their lack of objection.

Whether a trial court abuses its discretion by refusing to reopen a matter for changed circumstances or other good cause will always be subject to judicial review. But in this case, there is no suggestion of the prospective juror's recanting or modifying his earlier statement. Even if defense counsel were not obliged to seek clarification before committing to the court's demand for challenges, his subsequent questioning of this prospective juror in no way altered the circumstances of his employment. Defense counsel simply reacted to the extent of the prospective juror's past experience with domestic law enforcement and his attitude about the trustworthiness of law enforcement officers in general. While these matters may have provided some support for a challenge based on actual enmity or bias toward the defendant, or an inability to follow the instructions of the court, they did not alter (or even amplify) the prospective juror's employment status.

To elevate tactical trial decisions to the level of constitutional rights by holding, as the majority apparently does today, that courts may not rely on counsel's explicit representations—including an explicit waiver of an objection or challenge—in the absence of a warning that he will not be permitted to change his position at some later time, is not only an unjustified infringement on the authority of trial courts, but also a formula for disaster in the day-to-day conduct of courtroom proceedings. I would therefore approve the trial court's ruling without addressing the merits of the defendant's challenge.

In addition to considering it unnecessary, however, I strongly disagree with the majority's treatment of this statutory challenge for cause, and I fear that it will undermine the framework that has governed the analysis of such challenges in this jurisdiction for considerable time. By defining the term "public law enforcement agency" from the dictionary, rather than the context in which it is used, the majority ignores the legislature's clear reference to agencies that are not just subdivisions of government but also ones with hiring authority.

As the court of appeals has recognized on a number of occasions, the specific challenge for cause defined at § 16–10–103(1)(k) is not concerned with training, background, or service as a law enforcement officer, but rather with a prospective juror's dependence for his livelihood on the continued approval of a public law-enforcement agency. *See, e.g., People v. Veloz,* 946 P.2d 525, 529–30 (Colo.App.1997)(holding volunteer reserve police officer not "compensated" under statute); *People v. Maes,* 43 Colo.App. 365, 609 P.2d 1105 (Colo.App.1979)(finding mechanic in police garage subject to challenge under statute); *People v. Scott,* 41 Colo.App. 66, 583 P.2d 939, 942 (Colo.App.1978)(holding trial court properly denied challenge to retired prison guard because statute did not apply to former employees). This narrow statutory provision in no way suggests the existence of a presumption of individual bias arising from association or affinity with law enforcement officers; it addresses a matter of competing or conflicting interests. It recognizes the conflict inherent in taking a public position perceived as being contrary to the interests of one's employer, and therefore the risk of endangering one's livelihood.

The subdivision of government referred to as a public law-enforcement agency in the statute therefore includes only subdivisions with the authority to hire and fire the prospective juror. The performance of law-enforcement related functions on behalf of a governmental unit that cannot itself be fairly characterized as a law-enforcement agency does not, standing alone, establish cause, nor can assignment by a non-law-enforcement governmental employer to one of its subdivi-sions performing law-enforcement related functions. *See People v. Simon,* 100 P.3d 487 (Colo.App.2004)(finding employee of Environmental Protection Agency could not be challenged under the statute since the EPA is an investigating and rule making body, not a law-enforcement agency). The statutory provision applies, by its own terms, only to employees of, and compensated by, public law-enforcement agencies, and only then is the rationale for its existence satisfied.

The majority should therefore have addressed the question whether the Department of the Army, rather than the military police corps, is a public law-enforcement agency, just as the court of appeals did. The published law of this jurisdiction has long answered that question in the negative. *People v. Urrutia,* 893 P.2d 1338, 1346 (Colo. App.1994)("That the functions of the Department of Defense require it to maintain security measures at its facilities, and to hire civil security guards who conduct investigations and searches, does not transform the Army and its various installations into a law enforcement arm of the government.").

Even if, however, a non-employing subdivision of government could qualify as a law-enforcement agency within the meaning of the statute, merely by right of its members having the authority to perform law-enforcement functions, I believe the majority opinion betrays a fundamental lack of appreciation for military organization and command structure by classifying the military police corps, or branch, as such an agency. Apart from considerations of esprit, branch designation in the military appears to be little more than an organizational tool for personnel management, indicative of occupational specialty, or classes of occupational specialties, and career development. While branch designation may apparently indicate the kind of training and determine the nature of the units and missions to which its members have been or will be assigned, nothing in the pamphlets or training manuals cited by the majority even remotely suggests that a branch of the service is a tactical or administrative unit of organization; or that branch designation imbues anyone with authority to act.

While military police personnel may be trained and made available to assist commanders, at select organizational levels, with the performance of law-enforcement activities, their particular mission and the authority to perform it derive directly from the orders of the commander—not their branch designation. It seems clear that members of military police units may be tasked with, and have the authority to perform, traditional law-enforcement functions, but nothing suggests that this is necessarily the case. In fact, the prospective juror in this case testified that he led a platoon performing combat missions and site security—not the military police combat service support mission of law enforcement. Branch designation as a military policeman seems more akin to certification by the P.O.S.T. Board than being employed by a civilian police department.[1] *See* maj. op. at 212.

On the other hand, depending upon their particular assignments, soldiers and officers other than the military police are clearly responsible for carrying out traditional law-enforcement functions in their units, including maintaining order, arresting suspected criminals, conducting investigations, and temporarily detaining prisoners. *See* maj. op. at 212. The quasi-military trappings of civilian police forces, which set them apart in appearance from the rest of civilian society, are definitionally present in the military itself, without regard to particular domestic law-enforcement responsibilities. Bearing arms, wearing uniforms, and being subject to a military command structure, however, was never intended to support a challenge for cause.

By ignoring the statute's clear limitation to prospective jurors, in criminal trials, who are *employed* by public law enforcement agencies, the majority loses sight of the rationale supporting this per se rule of exclusion and finds itself attempting to define the term "agency," as well as the concept of "law-enforcement," virtually without context. Its journey in search of legislative intent is therefore, not surprisingly, unsatisfying. To add insult to injury, the majority then attempts to apply its newly minted, global defi-

nition to a military organization, structured for purposes and governed by authority vastly different from the civilian society for which the term was written. Because the defendant expressly waived his right to assert a challenge for cause arising from this provision, I consider it unnecessary to construe the statute, even as it would apply to this context, much less to define "public law-enforcement agency" for all contexts.

Because I would affirm the judgment of the court of appeals, I respectfully dissent. I am authorized to state that Justice KOURLIS and Justice RICE join in this dissent.

---

1. Peace Officers Standards and Training Board, § 24–31–302, C.R.S. (2005).