**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joseph ROMERO, Defendant–Appellant.**

**No. 07CA1652.**

Colorado Court of Appeals, Div. VI.

Oct. 30, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Suzan Trinh Almony, Suzan Trinh Almony, Broomfield, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Joseph Romero, appeals the judgment of conviction entered on a jury verdict finding him guilty of escape. We reverse and remand for a new trial because we conclude the district court erred by denying defendant's challenge for cause to a juror who worked as a security specialist at a community corrections facility.

On October 10, 2006, defendant was convicted of violating his probation in another criminal case and sentenced to sixty days in the Denver County Jail, with an assignment to work release which allowed him to check out of the jail every day to go to work. On November 1, 2006, defendant checked out of the jail and did not return, even though he had not completed his sentence.

The People charged defendant with escape, in violation of section 18–8–208(2), C.R.S.2008. A jury found defendant guilty. The district court sentenced defendant to four years in the custody of the Department of Corrections (DOC), to be followed by a period of mandatory parole.

## I. Challenge for Cause of Prospective Juror

Defendant contends that the trial court erred by denying his challenges for cause of two prospective jurors. We agree with respect to one, J.M–S., and therefore need not

address defendant's contention regarding the other.

## A. Preservation of the Issue

■ As an initial matter, we address and reject the People's contention that defendant did not preserve his challenge of J.M–S. for appellate review. The People argue that defendant waived any challenge for cause with respect to J.M–S. because his counsel did not make a timely challenge and did not question J.M–S. adequately.

■ Unless a party is aware that his initial opportunity to challenge a prospective juror will be his only opportunity to do so, a party need not make his objections to a juror's qualifications and competency when the court initially questions the juror. *Ma v. People*, 121 P.3d 205, 209 (Colo.2005). To preserve the issue for appeal, a party need only raise the objection before the jurors are sworn in. *See* Crim. P. 24(b)(2). The challenge is waived, however, if it is not made before the jurors are sworn in. *Id.*

■ A defendant may also waive a challenge for cause if counsel does not use reasonable diligence during jury selection to determine whether grounds for such a challenge exist. *Ma*, 121 P.3d at 209; *People v. Asberry*, 172 P.3d 927, 930 (Colo.App.2007); *see* Crim. P. 24(b)(2). Counsel is reasonably diligent if counsel takes the opportunity to question a prospective juror adequately. *Ma*, 121 P.3d at 209.

Applying these principles, the supreme court and divisions of this court have found waivers in a number of cases. *See, e.g., People v. Lewis*, 180 Colo. 423, 427–28, 506 P.2d 125, 127 (1973) (the defendant waived a statutory objection to a juror who had previously been convicted of a felony, which he did not raise until after trial, because during voir dire counsel failed to inquire into the criminal records of the prospective jurors); *People v. Cevallos–Acosta*, 140 P.3d 116, 121 (Colo.App.2005) (the defendant did not preserve the issue whether a volunteer reserve officer qualified as an employee of a public law enforcement agency, because that was not the basis of his challenge for cause); *People v. Crespin*, 635 P.2d 918, 920–21

(Colo.App.1981) (the defendant waived his objection to a prospective juror where his counsel failed to question the juror during voir dire and failed to make a challenge for cause). In this case, however, the record does not present circumstances similar to those in cases in which waivers have been found.

During voir dire, J.M–S. said that she worked as a security specialist at a community corrections facility. In response to the court's questioning, J.M–S. said that her job responsibilities included conducting head counts at the facility, administering urine and blood tests, and generally maintaining order. Defense counsel did not ask J.M–S. any additional questions about her job responsibilities, but subsequently challenged her for cause, before the jurors were sworn in, arguing that she should be dismissed because she "works for a law enforcement agency." Defense counsel did not waive the challenge for cause because he made a timely and appropriate challenge and, when he made the challenge, had information sufficient to support it, thus rendering additional questioning to determine the basis or validity of the challenge unnecessary.

## B. Merits

The district court denied counsel's challenge for cause to J.M–S. because "she's not a compensated law enforcement officer related to law." She remained on the jury after defendant exhausted his peremptory challenges.

■ Ordinarily, we review a district court's resolution of a challenge for cause for an abuse of discretion. *People v. Young*, 16 P.3d 821, 824 (Colo.2001); *Carrillo v. People*, 974 P.2d 478, 486 (Colo.1999). In this case, however, the issue is whether the district court misconstrued a statute and a substantially similar rule of criminal procedure. Construction of such provisions presents a question of law. Therefore, we review the district court's decision de novo. *Hernandez v. People*, 176 P.3d 746, 751 (Colo.2008); *People v. Robinson*, 187 P.3d 1166, 1177 (Colo. App.2008); *see People v. Macrander*, 828 P.2d 234, 239–40 (Colo.1992).

A defendant in a criminal case has a constitutional right to an impartial jury. *Ma,* 121 P.3d at 210; *see* U.S. Const. amend. VI; Colo. Const. art. II, § 16. Accordingly, "the ... court must excuse prejudiced or biased persons from the jury." *Nailor v. People,* 200 Colo. 30, 32, 612 P.2d 79, 80 (1980). Section 16–10–103, C.R.S.2008, sets forth circumstances where a juror may be challenged for cause based on actual or implied bias. *See also* Crim. P. 24(b). Where a statutory basis of implied bias exists, the court has no discretion to deny a timely and clear challenge for cause on that basis. *See Macrander,* 828 P.2d at 240.

Pursuant to section 16–10–103(1)(k), C.R.S. 2008, a court must sustain a challenge for cause where "[t]he juror is a compensated employee of a public law enforcement agency." *Accord* Crim. P. 24(b)(1)(XII). The supreme court has defined "public law enforcement agency" as a "police-like division of government that has the authority to investigate crimes and to arrest, to prosecute, or to detain suspected criminals." *Ma,* 121 P.3d at 211.

Community corrections programs were created to provide the courts, the DOC, and the State Board of Parole with more flexibility and a broader range of correctional options for offenders under their respective jurisdictions. § 17–27–101, C.R.S.2008. A community corrections program is "a community-based or community-oriented program that provides supervision of offenders ...." § 17–27–102(3), C.R.S.2008. A sentence to community corrections is "more severe than probation, but not as harsh as incarceration." *People ex rel. Van Meveren v. Dist. Court,* 195 Colo. 34, 36, 575 P.2d 4, 6 (1978) (interpreting former § 27–27–101, C.R.S.1973 (1976 Supp.) ), *abrogated on other grounds by Keller v. People,* 29 P.3d 290 (Colo.2000). A person sentenced to community corrections is considered to be "in custody" and subject to the authority of the court. *People v. Lucero,* 654 P.2d 835, 836 (Colo. 1982); *People v. Brown,* 695 P.2d 776, 777 (Colo.App.1984); *see also* § 17–27–106, C.R.S.2008 (a person who fails timely to return to a community corrections facility shall be deemed to have escaped from custody and may be prosecuted for escape and sentenced under § 18–8–208, C.R.S.2008).

The executive director of the DOC must designate staff to maintain jurisdiction over offenders placed in community corrections. § 17–27–105.5(2), C.R.S.2008. Such staff may include community corrections program agents. *Id.* These agents are "peace officers" within the meaning of sections 16–2.5–101 and–136, C.R.S.2008. § 17–27–102(3.5), C.R.S.2008. They are authorized to, among other things, supervise offenders; investigate, detect, and prevent crime involving offenders; issue warrants for the arrest of offenders; and arrest offenders. § 17–27–105.5(3), C.R.S.2008. They may also "seek out and arrest any fugitive from a correctional facility when called upon" by other agencies. § 17–27–105.5(6), C.R.S.2008. In addition, "[t]he director of community corrections or any community corrections program agent may arrest any offender when any offense under the laws of this state has been or is being committed by the offender" under specified circumstances. § 17–27–105.5(4), C.R.S.2008.

In *People v. Scott,* 41 Colo.App. 66, 583 P.2d 939 (1978), a division of this court held that a state prison is a public law enforcement agency for purposes of section 16–10–103(1)(k) and Crim. P. 24(b)(1)(XII). The division relied on the fact that certain prison employees are statutorily authorized to make arrests of persons who break criminal laws, as well as the prisons' "extensive involvement with law enforcement functions...." *Id.* at 67–68, 583 P.2d at 941; *see also Ma,* 121 P.3d at 211 (recognizing that decisional law holds that the DOC is a public law enforcement agency for juror disqualification purposes); *People v. Urrutia,* 893 P.2d 1338, 1345 (Colo. App.1994) (same).

We see no basis to distinguish community corrections from the DOC in this context. Personnel of both have the authority to detain suspected offenders and to arrest persons who commit crimes. Both have extensive involvement with law enforcement functions. A person who is sentenced to either is considered to be in the custody of law enforcement authority. Accordingly, we hold that an employee of a community cor-

rections facility is an employee of a public law enforcement agency within the meaning of section 16–10–103(1)(k) and Crim. P. 24(b)(1)(XII).

We are not persuaded by the People's reliance on cases in which divisions of this court have held that various government agencies do not constitute public law enforcement agencies. *See People v. Speer,* — P.3d —, —, 2007 WL 3025312 (Colo.App. No. 05CA0206, Oct. 18, 2007) (federal Transportation Security Agency is not a public law enforcement agency); *People v. Simon,* 100 P.3d 487, 490–91 (Colo.App.2004) (federal Environmental Protection Agency is not a public law enforcement agency); *Urrutia,* 893 P.2d at 1345–46 (federal Department of Defense is not a public law enforcement agency); *People v. Zurenko,* 833 P.2d 794, 796 (Colo.App.1991) (state Department of Social Services and federal Equal Employment Opportunity Commission are not public law enforcement agencies). In each of those cases, the agency did not have the authority to arrest, prosecute, or detain suspected criminals, or any such authority was entirely incidental to the agency's essential functions. The division in *Urrutia* expressly distinguished the DOC from the Department of Defense on the basis that the former, unlike the latter, has "an explicit statutorily mandated purpose . . . to enforce the peace and to arrest violators." *Urrutia,* 893 P.2d at 1345. As discussed above, community corrections has the same explicit statutory purpose.

■ We also are not persuaded by the People's assertion, with which the district court apparently agreed, that J.M–S.'s job responsibilities remove her from the ambit of the statute and rule. The actual job responsibilities of the compensated employee of the public law enforcement agency are irrelevant to the determination whether disqualification is required under section 16–10–103(1)(k) and Crim. P. 24(b)(1)(XII). *Speer,* — P.3d at —; *see People v. Manners,* 708 P.2d 1391, 1392 (Colo.App.1985) (challenge to a doctor who worked for state penitentiary medical clinic should have been sustained); *People v. Maes,* 43 Colo.App. 365, 367, 609 P.2d 1105, 1107 (1979) (challenge to a mechanic in a police garage should have been sustained); *Scott,* 41 Colo.App. at 68, 583 P.2d at 941 (challenge to a counselor and a baker who worked for the Colorado State Penitentiary should have been sustained).

In sum, we conclude that the district court erred in denying defendant's challenge for cause of J.M–S. Therefore, we reverse defendant's conviction and remand for a new trial. *See Ma,* 121 P.3d at 207, 212 (a conviction must be reversed where a court incorrectly denied a challenge for cause under a statutory implied bias provision and the defendant exhausted all his peremptory challenges); *Macrander,* 828 P.2d at 244 (same).

## II. Other Issues

We address two other issues raised by defendant because they may arise again in the event of a retrial.

### A. Evidence of Prior Incarcerations

■ Defendant contends that the district court abused its discretion in ruling that evidence of his prior incarcerations could be admitted as impeachment evidence and was not subject to CRE 404(b). We find no reversible error.

■ We review a district court's rulings on evidentiary issues for an abuse of discretion. *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002). A district court abuses its discretion in this regard if its rulings are manifestly arbitrary, unreasonable, or unfair. *Id.; People v. Riggs,* 87 P.3d 109, 114 (Colo. 2004).

In opening statement, defendant's counsel argued that defendant thought he was "free to go" the day he did not return to the jail because he had been in custody for six weeks, believed he had earned two weeks good time credit, and therefore believed he had served his two-month sentence. Therefore, "[i]n his mind" he did not escape—that is, "he didn't knowingly escape."

Defendant testified that he walked away from his work release because he "understood" that he was receiving presentence confinement credit beginning on the date of his arrest, and that he was therefore free to

leave on November 1. Defendant said that he did not go through the regular checkout process because he believed that all he had to do to check out was to "sign out," as he normally did for his work release.

The prosecutor thereafter sought to impeach defendant by cross-examining him about his prior experiences on work release to show that he was familiar with the procedures for release from county jail. The court ruled that the evidence was admissible as impeachment, and not subject to CRE 404(b) analysis, stating,

> I think the testimony sought is that when you check out, you just don't leave for work release, you go through the formal procedures, bagging up your belongings, going to the other building. I think that's what testimony is sought.

> . . .

> [A]s to his prior experience in the Denver County jail, I think those are highly relevant. The Defendant has made these representations through his testimony to the jury, that he thought he finished his sentence, he was just allowed to leave the jail after he checked out for work release that morning. So I think that's highly relevant.

> Additionally, based on just about the last statement he made to the jury, that there is no way he would have just left the jail if he knew this was an escape, I think that opens the door to all this evidence so that the People can walk through that door.

> . . .

> I don't really think it's a 404(b) situation. It's just an impeachment as to what his testimony was.

On cross-examination, the prosecutor asked defendant whether he had been on work release two times "besides this case," to which defendant responded that he had. The prosecutor also asked defendant: "You knew from your other cases that if you leave without being processed out, you are an escapee, right?" Defendant responded, "But I didn't know I wasn't being processed out." The prosecutor subsequently elicited from defendant a concession that when he previously had been released from county jail he always went through a receiving and checkout process.

We conclude that the district court did not abuse its discretion in admitting this evidence.

 Evidence of other acts of the defendant is not admissible merely to show the defendant's character and that he acted in conformity therewith. *See* CRE 404(b). However, evidence of other acts may be admissible for a variety of legitimate purposes. *Id.; see also* CRE 608(b). Ordinarily, before admitting such evidence, the court should apply the four-part test articulated in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990), and make explicit findings as to the relevant factors. If the court decides to admit the evidence, it should instruct the jury regarding the limited purpose for which the evidence is being introduced. *People v. Garner*, 806 P.2d 366, 373–74 (Colo.1991); *People v. Warren*, 55 P.3d 809, 815 (Colo.App.2002).

There is authority for the proposition that if, as here, the evidence of other acts is offered for impeachment purposes, the strictures of CRE 404(b) and *Spoto* do not apply. *See, e.g., People v. Covington*, 988 P.2d 657, 664 (Colo.App.1999) (appearing to treat impeachment evidence as different from "other act" evidence), *rev'd on other grounds*, 19 P.3d 15 (Colo.2001); *People v. Harris*, 892 P.2d 378, 382 (Colo.App.1994) (noting that it is questionable whether the *Spoto* analysis is required where the evidence of other acts is offered "solely" for impeachment purposes; citing *United States v. Rackley*, 986 F.2d 1357 (10th Cir.1993)). Some federal courts, however, have treated impeachment as one of the permissible uses of other acts evidence under Fed.R.Evid. 404(b) (which is substantially similar to CRE 404(b) ), and have held that the admissibility of such evidence must be assessed under that rule. *See, e.g., United States v. Gay*, 967 F.2d 322, 328 (9th Cir.1992); *United States v. Stockton*, 788 F.2d 210, 219 n. 15 (4th Cir.1986).

We need not decide whether CRE 404(b) and *Spoto* apply to impeachment evidence. Assuming that they do, we conclude that

based on the record before us the evidence was clearly admissible under CRE 404(b). The evidence was material—it impeached defendant as to his intent and knowledge by calling into question what he claimed to have believed about procedures for being released from custody. It had logical relevance; that logical relevance was independent of any intermediate inference that defendant has a bad character; and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See Spoto,* 795 P.2d at 1318.

Therefore, should defendant testify similarly on remand, the evidence will be admissible as impeachment. Should the People otherwise seek to introduce evidence of defendant's prior incarcerations as part of its case to establish defendant's knowledge and intent, the district court should determine the admissibility of the evidence under CRE 404(b) based on the state of the record as it exists at the time the prosecution seeks to introduce it. *See Harris,* 892 P.2d at 382 (where evidence of other acts is admitted for impeachment purposes *and* as proof of the defendant's intent and knowledge, *Spoto* analysis should be applied).

### B. Jury Instruction

■ Defendant also contends that the district court erred in overruling his objection to the jury instruction on witness credibility. We disagree.

The district court gave the jury the following instruction:

> The credibility of a witness may be discredited by showing that the witness has been convicted of a felony. A previous conviction is one factor which you may consider in determining the credibility of the witness. You must determine the weight to be given to any prior conviction when considering the witness's credibility.
>
> The defendant is entitled to be tried for the crime charged in this case, and no other. You may consider testimony of a previous conviction only in determining the credibility of the defendant as a witness, and for determining whether element 4 of

the Escape charge has been proven beyond a reasonable doubt.

> When the defendant takes the witness stand his credibility is to be determined in the same manner as any other witness.

Defendant contends that the first paragraph of this instruction, to which he timely objected, modifies the pattern jury instruction regarding credibility, improperly emphasizing that prior convictions can discredit credibility. We are not persuaded.

■ A district court has substantial discretion in formulating the jury instructions, so long as they are correct statements of the law and fairly and adequately cover the issues presented. *People v. Gordon,* 160 P.3d 284, 288 (Colo.App.2007).

■ Contrary to defendant's contention, the first paragraph of the instruction tracks the language of CJI–Crim. 4:07 (1983). While pattern jury instructions are intended only as guidelines, they carry weight and should be considered by the court. *People v. Armstrong,* 720 P.2d 165, 168 (Colo.1986); *People v. Rester,* 36 P.3d 98, 102 (Colo.App. 2001).

The first paragraph of the instruction correctly states the law. It did not improperly emphasize prior convictions, but rather told the jurors a permissible purpose for which they could use the evidence. *See* § 13–90–101, C.R.S.2008 (a witness may be impeached by a prior felony conviction); *People v. Ibarra,* 849 P.2d 33, 39–40 (Colo.1993). Therefore, the district court did not abuse its discretion in giving the instruction.

The judgment is reversed and the case is remanded for a new trial.

Judge DAILEY and Judge BERNARD concur.