The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Martin NOVOTNY, Defendant–Appellant.

No. 06CA2204.

Colorado Court of Appeals,
Div. IV.

March 18, 2010.

Rehearing Denied May 6, 2010.

John W. Suthers, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Karen Mahlman Gerash, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Martin Novotny, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder (after deliberation) and first degree burglary. We reverse and remand for a new trial.

I.

Defendant first contends the trial court committed reversible error by denying his challenge for cause to a prospective juror who was employed as an assistant attorney general. We agree.

Section 16–10–103(1)(k), C.R.S.2009, requires a trial court to sustain a challenge for cause to a prospective juror who is "a compensated employee of a public law enforcement agency." *Accord* Crim. P. 24(b)(1)(XII). The court's determination that a prospective juror is not a compensated employee of a public law enforcement agency is subject to de novo review. *People v. Sommerfeld,* 214 P.3d 570, 572 (Colo.App.2009).

When a trial court erroneously denies a defendant's challenge for cause, reversal is

mandatory if the record shows that the defendant used a peremptory challenge to excuse the prospective juror and exhausted his remaining peremptory challenges. *Ma v. People,* 121 P.3d 205, 212 (Colo.2005).

Here, the court asked the panel of prospective jurors if any of them worked for a law enforcement agency. J.D. responded affirmatively and told the court that he was an assistant in the state attorney general's office with responsibility for representing the Department of Corrections (DOC). He added that he did not consider himself to be a sworn law enforcement agent.

Defendant challenged J.D. for cause because he was employed by a law enforcement agency. The court denied the challenge, explaining that J.D. was not subject to disqualification under section 16–10–103(1)(k) because "the Attorney General does a whole bunch of things besides law enforcement" and "this guy works in an area that's not law enforcement." Defendant used a peremptory challenge to remove J.D. and exhausted his remaining peremptory challenges.

We conclude that the trial court erred by focusing on whether J.D.'s work as an attorney for the DOC made him a compensated employee of a "law enforcement agency" for purposes of section 16–10–103(1)(k). A prospective juror's "particular responsibilities are not relevant for purposes of applying section 16–10–103(1)(k) and Crim. P. 24(b)(1)(XII)." *Sommerfeld,* 214 P.3d at 573; *see People v. Coleman,* 844 P.2d 1215, 1218 (Colo.App.1992) (section 16–10–103(1)(k) applies to "any employee under the control of a law enforcement agency, irrespective of his or her job duties, so long as he or she was under the control of such agency"). The rationale for this bright line rule is a "concern ... that one who is employed by a law enforcement agency will favor, or will be perceived to favor, the prosecution side of a criminal case." *Ma,* 121 P.3d at 210; *see also People v. Speer,* 216 P.3d 18, 26 (Colo. App.2007) (*cert. granted* Dec. 15, 2008) (employees of law enforcement agencies are subject to challenge for cause because a perception of partiality flows from the fact that

their "livelihoods depend on law enforcement agencies").

Therefore, even though the DOC constitutes a "law enforcement agency" under 16–10–103(1)(k), *see People v. Scott,* 41 Colo.App. 66, 68, 583 P.2d 939, 941 (1978), this appeal can be resolved solely by analyzing the law enforcement responsibilities of J.D.'s actual employer: the office of the state attorney general.[1]

In *Ma,* 121 P.3d at 212, the supreme court held that the Army Military Police Corps constitutes a "law enforcement agency" under 16–10–103(1)(k). The court began its analysis by observing that the phrase "law enforcement agency" is not defined in any of the statutes that govern jury selection and composition. The court then examined the common understanding of the phrase "law enforcement" and narrowly construed it as being limited to "the enforcement of criminal laws." *Id.* at 210–11. It explained that such a narrow construction, which excluded the enforcement of civil regulations, would "keep the pool of dismissible jurors to an appropriate size" and also achieve "the General Assembly's goal of maintaining actual and apparent jury impartiality." *Id.* at 211.

Of particular significance here, the court in *Ma* also considered how the term "law enforcement agency" is used in various Colorado's statutes:

In addition to reflecting the phrase's common definition and the General Assembly's intent, our construction of the phrase "law enforcement" finds support throughout Colorado statutory ... law. The statutes that define the term "law enforcement agency" also identify several types of law enforcement agencies, including: any police department, sheriff's department, or district attorney's office; *the office of the state attorney general;* the Colorado bureau of investigations; and the Colorado state patrol. §§ 8–47–203.3(2), 8–72–111(2), 24–50–127(2)(b), 26–1–114(3)(a)(III)(B), C.R.S. (2005) (statutes about state employee benefits and protections); § 42–5–201(6), C.R.S. (2005) (a statute about traf-

---

1. We express no opinion whether J.D. also might have been properly subject to challenge for cause based on the extent of his working relationship with the DOC.

fic regulations). Notably, *each of these agencies enforces criminal laws,* thus reinforcing the notion that the phrase "law enforcement" does not imply the enforcement of civil regulations.

*Ma,* 121 P.3d at 211 (emphasis added).

The court also observed that several divisions of this court have "implicitly construed the phrase 'law enforcement,' contained in section 16–10–103(1)(k), to connote only the enforcement of criminal laws," before summarizing its holding as follows:

> Combining the common meanings of the phrase "law enforcement" and the word "agency," we reason that the term "law enforcement agency" means a division of government that detects and punishes criminal violations of the law by performing police-like duties such as investigating crimes and arresting, prosecuting, or detaining suspected criminals. Put in a less cumbersome way, a law enforcement agency is a police-like division of government that has the authority to investigate crimes and to arrest, to prosecute, or to detain suspected criminals.

*Id.*

The first statutory definition cited by the court in *Ma* appears in a section which specifies that the state division of workers' compensation in the Department of Labor and Employment shall provide information concerning the location of any person whose name appears in the division's records, and who is the subject of an outstanding felony arrest warrant, to "law enforcement agencies." § 8–47–203.3(1), C.R.S.2009. For purposes of this section, " '[l]aw enforcement agency' includes ... the office of the state attorney general." § 8–47–203.3(2), C.R.S. 2009. This same definition appears in the three similar provisions cited by the court in *Ma. See* § 8–72–111(2), C.R.S.2009 (the attorney general is a "law enforcement agency" entitled to receive information about the whereabouts of an individual who is the subject of an outstanding arrest warrant from the division of employment and training); § 24–50–127(2)(b), C.R.S.2009 (using the

same definition with respect to wanted individuals whose whereabouts are known to the state personnel director); § 26–1–114(3)(a)(III)(B), C.R.S.2009 (using the same definition with respect to wanted individuals who receive public assistance, and whose whereabouts are known to the Department of Human Services).[2] These statutory definitions classifying the office of the state attorney general as a "law enforcement agency" weigh heavily in favor of a similar classification for purposes of section 16–10–103(1)(k).

But an even more compelling reason for making a like classification is that, in certain circumstances, the attorney general is vested with the type of prosecutorial and investigatory powers which the court in *Ma* identified as being central to its definition of a "law enforcement agency." For example, the attorney general must "appear for the state and prosecute ... all actions and proceedings, civil and criminal, when the state is a party or is interested when required to do so by the governor." § 24–31–101(1)(a), C.R.S. 2009; *see, e.g., People on Info. of Witcher v. Dist. Court,* 190 Colo. 483, 485, 549 P.2d 778, 780 (1976) (when prosecuting a case at the request of the governor, the attorney general has the right to assume prosecutorial responsibilities and duties); *see also* § 6–4–117, C.R.S.2009 (attorney general prosecutes criminal antitrust violations); §§ 11–51–603, 603.5, C.R.S.2009 (attorney general may prosecute criminal securities act violations); §§ 12–25–305(1), 24–31–101(1)(f), C.R.S.2009 (giving the attorney general concurrent original jurisdiction to prosecute the criminal offense of practicing architecture without a license). In addition, the attorney general acts as a criminal investigator when presenting evidence to a statewide grand jury. *See* § 13–73–106, C.R.S.2009; *People ex rel. Tooley v. Dist. Court,* 190 Colo. 486, 488–89, 549 P.2d 774, 776 (1976). Further, section 24–31–101(1)(a) requires the attorney general to represent the state in all appeals from criminal convictions, a responsibility that clearly constitutes an important part of the prosecu-

---

**2.** The final statutory definition of a "law enforcement agency" cited in *Ma* has no bearing on our analysis because it does not name any agency other than the Colorado State Patrol. § 42–5–201(6), C.R.S.2009.

torial process by virtue of the fact that a conviction challenged on appeal does not become final unless and until the prosecution prevails. *See People v. Hampton,* 876 P.2d 1236, 1239 (Colo.1994) ("[A] conviction is not final and has no legal force until after appeals have been exhausted.").

▪ Therefore, we conclude that the office of the state attorney general is a "law enforcement agency" for purposes of section 16–10–103(1)(k). *See Sommerfeld,* 214 P.3d at 573 (concluding that the Division of Youth Corrections is a "law enforcement agency" for purposes of section 16–10–103(1)(k), and distinguishing those cases in which divisions of this court have held that other agencies—which either did not have authority to conduct traditional law enforcement functions, or else had some such authority incidental to their essential functions—were not law enforcement agencies within the meaning of this same section).

Accordingly, we further conclude that because J.D. was a compensated employee of a law enforcement agency, the trial court erred by denying defendant's challenge for cause. Because defendant used a peremptory challenge to remove J.D. and then exhausted his remaining peremptory challenges, we must reverse the judgment of conviction and remand for a new trial. *See Ma,* 121 P.3d at 212. Consequently, we need not address defendant's claim that the court also erred by denying his challenge for cause to another prospective juror.

## II.

Defendant next contends the trial court abused its discretion by excluding the testimony of a witness with expertise in the field of applied linguistics. We decline to address this argument because it is unlikely that, in a new trial, defendant would seek to introduce this witness's testimony without developing the record to address the foundational shortcomings identified by the trial court in its ruling. *See Sommerfeld,* 214 P.3d at 574 (declining to address the sufficiency of an evidentiary foundation where it was unclear the same issue would arise again on retrial).

The judgment is reversed and the case is remanded for a new trial.

Judge TERRY concurs.

Judge CONNELLY specially concurs.

Judge CONNELLY specially concurring.

I agree it was legal error to deny defendant's challenge to a prospective juror employed by the Attorney General's Office. I write separately only to re-emphasize the "significant social costs," *People v. Merrow,* 181 P.3d 319, 322 (Colo.App.2007) (Webb, J., specially concurring), of a rule requiring new trials in cases such as this.

Defendant was convicted of murder based on a jury's verdict supported by compelling evidence. There is no question as to the impartiality of the twelve jurors who returned the verdict. The basis for reversal is the erroneous denial of a for-cause challenge to a prospective juror who ultimately did not serve on the jury because defense counsel used a peremptory strike to excuse him.

As noted in Judge Russel's opinion for the division in *Merrow,* this type of error would be harmless in federal courts. 181 P.3d at 320 (citing *United States v. Martinez–Salazar,* 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000)); *see also Rivera v. Illinois,* 556 U.S. 148, 156–62, 129 S.Ct. 1446, 1453–56, 173 L.Ed.2d 320 (2009) (discussing *Martinez–Salazar*). The error would also be harmless in most state courts, including some that applied a rule of automatic reversal before *Martinez–Salazar. See, e.g., State v. Hickman,* 205 Ariz. 192, 68 P.3d 418, 427 (2003) (overruling automatic reversal precedent); *Klahn v. State,* 96 P.3d 472, 480–84 (Wyo. 2004) (describing and following "movement away from an automatic reversal standard"); *see generally Kopsho v. State,* 959 So.2d 168, 175 & n. 3 (Fla.2007) (Bell, J., concurring in result only) (providing citations to "the ever-growing majority of state courts that apply the federal actual prejudice rule and do not require reversal unless a legally objectiona-

ble juror actually served on the jury" (footnote omitted) ); *but see, e.g., Shane v. Commonwealth,* 243 S.W.3d 336, 340–41 (Ky. 2007) (readopting automatic reversal rule).

Leading commentators agree an otherwise fair conviction should not be reversed simply because the trial judge erroneously denied a for-cause challenge to a prospective juror later removed with a peremptory challenge. *E.g.,* 7 Wayne R. LaFave, et al., *Criminal Procedure* § 27.6(b), at 103 n. 21 (3d ed.2007) (describing it as "the better rule" that erroneous denial of for-cause challenge is harmless "so long as the jury that actually sits is impartial"). Indeed, the experienced trial judge in this very case is among the advocates for a harmless error rule. *See* William T. Pizzi & Morris B. Hoffman, *Jury Selection Errors on Appeal,* 38 Am.Crim. L.Rev. 1391, 1431–32 (2001).

The longstanding Colorado rule, however, requires automatic reversal where a criminal defendant uses a peremptory strike to cure an erroneous for-cause denial and exhausts all other peremptory strikes. *See People v. Macrander,* 828 P.2d 234, 244 (Colo.1992) (tracing genesis of this rule to a 1911 civil case); *accord People v. Vecchiarelli–McLaughlin,* 984 P.2d 72, 75 (Colo.1999); *Carrillo v. People,* 974 P.2d 478, 486–87 (Colo.1999). Thus far at least, our supreme court has not been persuaded to adopt the contrary rule of *Martinez–Salazar. See People v. Lefebre,* 5 P.3d 295, 305–08 (Colo.2000).

Our court is bound to apply this Colorado rule. I therefore must concur in the opinion reversing defendant's conviction.