The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

2016 CO 11

Supreme Court Case No. 13SC58
Certiorari to the District Court
District Court, City and County of Denver, Case No. 11CV6844

Petitioner:

The People of the State of Colorado,

v.

Respondent:

Lorenzo Bonvicini.

Judgment Reversed
en banc 

February 22, 2016

Attorneys for Petitioner:
Mitchell R. Morrissey, District Attorney, Second Judicial District 
Everett Engstrom, Deputy District Attorney

Denver, Colorado

Attorneys for Respondent: 
Springer and Steinberg, P.C. 
Harvey A. Steinberg
Ariel Z. Benjamin

Denver, Colorado

JUSTICE BOATRIGHT delivered the Opinion of the Court.
JUSTICE GABRIEL concurs in the judgment, and JUSTICE HOOD joins in the concurrence in the judgment.

 

¶1       We granted certiorari to determine whether the trial court should have sustained a challenge for cause to a potential juror who was an employee of a privately owned and operated prison. The appellate court held that because the private prison used “sovereign police powers characteristic of law enforcement in service of the public interest,” it qualified as a “public law enforcement agency” as that term is used in section 16-10-103(1)(k), C.R.S. (2015). Order Regarding Appeal, Bonvicini v. People, No. 11CV6844 (Denv. Dist. Ct. Dec. 12, 2012). Consequently, the appellate court concluded that the trial court should have sustained the defendant’s challenge for cause to a compensated employee of the private prison.[1] We now reverse.

¶2       We hold that, under the plain language of section 16-10-103(1)(k), a private
company that operates a prison is not a “public law enforcement agency” because it is not a division or subdivision of state or federal government that has the authority to investigate crimes and to arrest, prosecute, or detain suspected criminals. The trial court therefore appropriately denied defendant Lorenzo Bonvicini’s challenge for cause to the potential juror in question. Because we conclude that the trial court did not err, we do not address the second issue concerning the proper remedy for a trial court’s erroneous ruling on a challenge for cause.[2] Accordingly, we reverse the appellate court and remand the case to that court for proceedings consistent with this opinion.

I. Facts and Procedural History

¶3       The People charged Bonvicini with driving under the influence (“DUI”). During jury selection, “Juror F” told the trial court that she worked as a registered nurse at the Hudson Correctional Facility near Hudson, Colorado. In later questioning from the court, Juror F stated that a private national correctional facility company, the GEO Group, Inc., operated the Hudson Correctional Facility and was under contract with the State of Alaska to house Alaskan inmates there. She also disclosed that she worked full-time at the prison and received her compensation from the GEO Group. When directly asked whether the GEO Group was a public entity, Juror F stated it was not.

¶4        Bonvicini challenged Juror F for cause, arguing that she was the “functional
equivalent” of a public-prison employee and therefore qualified as a “compensated employee of a public law enforcement agency” under section 16-10-103(1)(k). The trial court denied Bonvicini’s challenge, concluding that a privately run prison did not qualify as a public law enforcement agency under the statute. In denying the challenge, the trial court stated that “it would be a stretch to . . . go beyond the letter of the law where it says a public law enforcement agency.” In light of this denial, Bonvicini used a peremptory challenge to dismiss Juror F and ultimately exhausted all of his challenges. After trial, the jury convicted Bonvicini of driving while ability impaired, a lesser included offense of DUI.

¶5       Bonvicini appealed, arguing, among other things, that the trial court erred in denying his challenge for cause to Juror F.[3] The appellate court reversed the trial court, holding that Juror F was an employee of a public law enforcement agency as defined in section 16-10-103(1)(k) and should have been excused. In its order, the appellate court first acknowledged that prisons qualify as law enforcement agencies. See People v.  Scott, 583 P.2d 939, 941 (Colo. App. 1978). It then turned to whether a private prison qualified as a “public . . . agency.”

¶6       After analyzing the plain language of the statute, the appellate court concluded that “the statute is ambiguous as to what characteristics make an agency public,” and therefore resorted to other statutory-interpretation tools. The appellate court considered a number of prior cases from this court that discuss the main purposes of the statute, particularly Ma v. People, 121 P.3d 205 (Colo. 2005). The appellate court also quoted a dictum from People in the Interest of R.A.D., 586 P.2d 46, 47 (Colo. 1978), which stated that a trial court should excuse a potential juror who “has even a tenuous relationship with any prosecutorial or law enforcement arm of the state.”

¶7       Ultimately, the appellate court concluded that “the performance of law enforcement functions is persuasive in reaching the conclusion that an entity is a public agency because law enforcement is the prerogative of the state.” Applying this understanding to the private prison in this case, the appellate court concluded that “[t]he important fact is that this company operates, albeit for profit, by using sovereign police powers characteristic of law enforcement in service of the public interest. Therefore, it is a ‘public . . . agency’ under [section] 16-10-103(1)(k).” As a result, the appellate court concluded that the trial court erred in denying Bonvicini’s challenge for cause to Juror F. In light of this finding of error, and pursuant to then-binding precedent requiring automatic reversal, People v. Macrander, 828 P.2d 234, 244 (Colo. 1992), overruled by People v. Novotny, 2014 CO 18, ¶ 2, 320 P.3d 1194, 1196, the appellate court reversed the trial court and remanded the case for a new trial.

¶8     We granted certiorari.

II. Standard of Review

¶9       This case requires us to interpret the statute governing challenges for cause to potential jurors. Statutory construction is a question of law, which we review de novo. People v. Johnson, 2015 CO 70, ¶ 9, 363 P.3d 169, 174.

III. Analysis

¶10       As we explain in Mulberger v. People, 2016 CO 10, ¶ 9, __ P.3d __, which we also issue today, challenges for cause to potential jurors are statutory tools designed in part to protect a defendant’s constitutional right to a trial before a fair and impartial jury. Section 16-10-103(1) includes several grounds upon which either party in a criminal case may make a challenge for cause;[4] if the proponent of a challenge demonstrates to the trial court that a potential juror falls within any of those categories, the statute implies their bias as a matter of law and requires the trial court to sustain challenges brought against them in an attempt to eliminate any appearance of prejudice or partiality. Id. at ¶¶ 9–10. However, when interpreting section 16-10-103(1)(k), “we must bear in mind that a representative cross-section of the community is an essential component of the Sixth Amendment right to a trial by jury.” Id. at ¶ 9 (quoting Binkley v. People, 716 P.2d 1111, 1112 (Colo. 1986)).

¶11       At issue in this case is section 16-10-103(1)(k), which requires a trial court to sustain a challenge for cause to a potential juror who is a “compensated employee of a public law enforcement agency.”[5] After analyzing section 16-10-103(1)(k) and our precedent interpreting it, we hold that, under the plain language of the statute, a “public law enforcement agency” is a division or subdivision of state or federal government that has the authority to investigate crimes and to arrest, prosecute, or detain suspected criminals. Hence, we conclude that the GEO Group is not a public law enforcement agency because it is not an official division (or subdivision) of state or federal government. Therefore, Juror F does not fall within the scope of section 16-10-103(1)(k), and the trial court did not err in denying Bonvicini’s challenge for cause.

A. “Public Law Enforcement Agency”

¶12       In interpreting the applicability of section 16-10-103(1)(k), we seek to “ascertain and give effect to the purpose and intent of the General Assembly in enacting it.” Johnson, ¶ 11, 363 P.3d at 175 (quoting Shaw v. 17 W. Mill St., LLC, 2013 CO 37, ¶ 13, 307 P.3d 1046, 1049). To do so, we first look to the plain meaning of the statutory language, reading words and phrases in context and construing them according to common usage unless they have acquired a technical or particular meaning, whether by legislative definition or otherwise. Id.; Ma, 121 P.3d at 210.

¶13       In this case, we must determine whether “public . . . agency” in section 16-10-103(1)(k) extends beyond official divisions of government to include certain private entities under certain circumstances. The People argue that use of the word “public” in the statute makes a bright-line distinction between government agencies and private, nongovernment agencies, and does not allow a private entity to cross that line into the “public” realm for purposes of challenges for cause. In response, Bonvicini asserts that, at least in the context of private entities that operate detention facilities, we should eschew such a bright-line understanding of the word “public” in favor of a more nuanced “functional equivalent” test. In his view, a bright-line rule in this context fails to account for the modern proliferation of private prisons that contract with state or federal governments to house inmates. Because private detention facilities derive their ability to house suspected and convicted criminals from the state and could not operate without that grant of authority, see § 17-1-104.5(2), C.R.S. (2015), Bonvicini asserts that they should be included under section 16-10-103(1)(k) just like state-operated detention facilities. In his view, excluding private prisons from the statute’s scope would undermine the statute’s intent to ensure that a jury is impartial, both in fact and appearance, because the concern that a potential juror might possess a bias in favor of the prosecution is equally present for employees of private prisons as of public ones. To resolve this question, we turn to the plain language of the statute.

¶14       We have not directly considered use of the word “public” in this statute before. Instead, our prior cases regarding section 16-10-103(1)(k) address other aspects of the statute—particularly what it means to be a “law enforcement agency”—and take for granted the fact that the agency at issue is “public.” See, e.g., Novotny, ¶¶ 11–13, 320 P.3d at 1198 (holding that the office of the state attorney general is a law enforcement agency); Ma, 121 P.3d at 209–13 (“The word ‘agency’ is defined as a ‘division of government.’” (emphasis added) (citing Am. Heritage Dictionary of the English Language 32 (4th ed. 2000))); People v. Speer, 255 P.3d 1115, 1120–22 (Colo. 2011) (holding that the federal Department of Homeland Security and Transportation Safety Administration were not public law enforcement agencies under the statute). In those cases, the public nature of the agencies was not at issue because the agencies were official arms of state or federal government, and none of the parties disputed that an official governmental arm was plainly a public agency.[6]

¶15       In Ma, for example, the defendant challenged a potential juror who served as a platoon leader in the Army Military Police Corps, working one weekend per month in military police combat and site security missions. 121 P.3d at 207. We held that the Army Military Police Corps qualified as a “law enforcement agency” under section 16-10-103(1)(k). Id. at 209, 212. On the statutory interpretation issue, we concluded that “law enforcement agency” means “a police-like division of government that has the authority to investigate crimes and to arrest, to prosecute, or to detain suspected criminals.” Id. (emphasis added). Thus, under this definition, we determined that while the Department of Defense was not itself a law enforcement agency under the statute, the Army Military Police Corps within it qualified as such. Id. at 211–12. In sum, we concluded that section 16-10-103(1)(k) allowed for successful challenges only to government employees who work for law enforcement agencies, and we did so without interpreting the significance of the word “public” in the statute.

¶16       With that question now directly at issue here, we conclude that “public,” as used in section 16-10-103(1)(k), is synonymous with “governmental.” The word “public” typically denominates an entity’s relationship to government—specifically, an official governmental arm of the state is considered public, while any other entity is considered private. See Richardson v. McKnight, 521 U.S. 399, 401–02, 412 (1997) (holding that a statute’s language and public policy dictated that privately employed prison guards were not “public employees” entitled to qualified immunity); cf. § 24-10-103(5), C.R.S. (2015) (defining “Public entity” in the context of the Colorado Governmental Immunity Act by listing numerous government entities and political subdivisions); Colo. Ass’n of Pub. Emps. v. Bd. of Regents of Univ. of Colo., 804 P.2d 138, 143–44 (Colo. 1990) (holding that the University of Colorado University Hospital was not a private hospital because government officials founded it and continued to control its internal affairs). The plain language of section 16-10-103(1)(k) shows that, through inclusion of the word “public,” the General Assembly sought to draw the line for challenges under that paragraph between the private sector and the government (“public”) sector, not just between entities that do or do not fulfill traditionally governmental duties of “law enforcement.” Had it wished to draw a different line—one that caused some private, non-governmental organizations to fall within the statute’s purview—it would have drafted paragraph (k) differently, whether by adding specific language to that effect or simply by omitting the word “public.” See Binkley, 716 P.2d at 1114 (“[I]f the legislature intended to include [unlicensed law school graduates and other persons formally trained in law] within the challenge for cause created by section 16-10-103(1)(k), [C.R.S. (1978),] it is reasonable to assume that it would have cast the statutory language in those specific terms and would not have used the much more restrictive word ‘lawyer’ in the statute.”). We thus adhere to our holding in Ma that a “public law enforcement agency” under section 16-10-103(1)(k) is a division or subdivision of state or federal government that has the authority to investigate crimes and to arrest, prosecute, or detain suspected criminals.

¶17       In following Ma’s definition, we reject Bonvicini’s argument, and the appellate court’s similar conclusion, that a functional equivalent test is appropriate and more effectively achieves the General Assembly’s intent to ensure that a jury is impartial, both in fact and appearance. Interpreting section 16-10-103(1)(k) in such a way would ignore the statute’s plain language, render the word “public” meaningless, and imply bias where the statute does not authorize it. Implied biases “apart from the statutory scheme” do not exist, because our task is to apply the plain language of section 16-10-103(1)(k) as written. People v. Rhodus, 870 P.2d 470, 477 (Colo. 1994). A functional equivalent test would violate this principle because it would expand the statute’s reach beyond compensated employees of public law enforcement agencies to also include compensated employees of some private entities. Hence, that test is at odds with the statute’s plain and unambiguous language.

¶18       Our analysis here shows that, while Rhodus precludes implying bias beyond section 16-10-103(1)(k)’s plain language, a dictum in R.A.D. encourages it. See id.; R.A.D., 586 P.2d at 47. In R.A.D., we stated that, “[t]o insure that a jury is impartial in both fact and appearance, a prospective juror who has even a tenuous relationship with any prosecutorial or law enforcement arm of the state should be excused from jury duty in a criminal case.” Id. To resolve the tension between that statement and Rhodus, we disavow—to the extent that it could be construed as precedential authority—the R.A.D.  dictum and instead follow Rhodus’s rule, which embraces a plain language analysis.

¶19       Having interpreted the relevant portions of section 16-10-103(1)(k), we now turn to the facts of this case to determine whether Juror F’s employer is a public law enforcement agency, and thus whether the trial court erred in denying Bonvicini’s challenge for cause.

B. Application

¶20        Applying the previous section’s analysis to this case, we conclude that the GEO Group is not a public law enforcement agency, and therefore that Juror F is not a “compensated employee of a public law enforcement agency” under section 16-10-103(1)(k). There is no dispute that the GEO Group is a private corporation. The GEO Group’s only relevant connections to government are the contract it has with the State of Alaska and the permission it obtained from Colorado to house Alaskan inmates at the Hudson Correctional Facility. Those connections vest the GEO Group with the ability to house inmates—a function often performed by state and federal law enforcement agencies—but they do not transform the GEO Group into a bona fide government agency. The GEO Group still controls its own internal affairs, and it does not take any direction from state officials aside from ensuring compliance with Colorado law relating to the security and operation of private prisons. Therefore, the GEO Group is not a “public law enforcement agency” under section 16-10-103(1)(k).

¶21       Accordingly, we conclude that the appellate court erred in holding that the trial court should have sustained Bonvicini’s challenge for cause to Juror F. As an employee of a private company at a privately operated prison, Juror F was not a “compensated employee of a public law enforcement agency” under section 16-10-103(1)(k), and the trial court was correct to deny Bonvicini’s challenge for cause under that provision.

IV. Conclusion

¶22       We hold that “public law enforcement agency” in section 16-10-103(1)(k) means a division or subdivision of state or federal government that has the authority to investigate crimes and to arrest, prosecute, or detain suspected criminals. In particular, we hold that inclusion of the word “public” in the statute requires that the potential juror’s employer be an official arm of state or federal government. In light of this holding, we reverse the appellate court and hold that the trial court did not err when it denied Bonvicini’s challenge for cause to Juror F, an employee of a private company that operates a prison. Because we conclude that the trial court did not err, we do not address the second issue in this case, which concerns the proper remedy for a trial court’s erroneous ruling on a challenge for cause. We remand the case for proceedings consistent with this opinion.

JUSTICE GABRIEL concurs in the judgment, and JUSTICE HOOD joins in the concurrence in the judgment.

JUSTICE GABRIEL, concurring in the judgment.

¶23       In his concurring opinion in PDK Laboratories Inc. v. United States Drug Enforcement Administration, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment), then-Judge and now-Chief Justice John Roberts noted the “cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more.” In this case, the majority holds that a private company that operates a prison is not a public law enforcement agency for purposes of section 16-10-103(1)(k), C.R.S. (2015). Maj. op. ¶ 2. The majority thus reverses the district court’s decision, which had concluded that the county court erred in denying a challenge for cause to a juror who was an employee of a private company that operates a prison. Id. at ¶ 22.

¶24       Although I agree that the district court’s ultimate determination should be reversed, in my view, our decision in People v. Novotny, 2014 CO 18, 320 P.3d 1194, is dispositive, and we therefore need not—and should not—reach the merits of the statutory interpretation question presented. See PDK Labs., 362 F.3d at 799 (Roberts, J., concurring in part and concurring in the judgment). Accordingly, I respectfully concur in the judgment only.

I. Novotny 

¶25       In Novotny, ¶ 27, 320 P.3d at 1203, we overruled our decision in People v. Macrander, 828 P.2d 234, 244 (Colo. 1992), in which we had held that a trial court’s erroneous denial of a challenge for cause required reversal if the defendant then exercised a peremptory challenge to remove the challenged juror and exhausted all of his or her remaining peremptory challenges. We thus concluded that (1) allowing a defendant fewer peremptory challenges than authorized, or than available to and exercised by the prosecution, is not, in and of itself, structural error; and (2) reversal for other than structural error is appropriate only when dictated by a case-specific, outcome-determinative evaluation of the likelihood that the error affected the verdict. Novotny, ¶ 27, 320 P.3d at 1203.

¶26       The outcome-determinative evaluation to which we referred requires an assessment of harmlessness, under which a defendant must show prejudice to obtain reversal. Id. at ¶¶ 2, 18–23, 27, 320 P.3d at 1196, 1200–03; accord id. at ¶ 30, 320 P.3d at 1203 (Hood, J., concurring in part and dissenting in part). Most courts that have addressed the question, including divisions of our court of appeals, have concluded that to make such a showing of prejudice, a defendant ordinarily must show that a biased or incompetent juror participated in deciding the defendant’s guilt. See, e.g., People v. Wise, 2014 COA 83, ¶ 28, 348 P.3d 482, 489 (collecting cases). 

¶27       Here, even were I to assume, without deciding, that the county court erred in denying the challenge for cause to Juror F, who worked as a nurse at a privately owned prison, I would conclude that any such error was harmless under Novotny because Bonvicini has shown neither that a biased juror sat on his jury nor any other prejudice. See id. at ¶¶ 28–29, 348 P.3d at 489.

¶28       I am not persuaded otherwise by Bonvicini’s assertion that Juror S was, in fact, a biased juror who sat on his jury. Bonvicini contends that Juror S gave conflicting answers about whether he would hold Bonvicini’s decision not to testify against Bonvicini. Bonvicini further notes that he had sought an additional peremptory challenge to allow him to strike Juror S but that the county court denied that request.

¶29       As to Bonvicini’s first argument, the transcript of the voir dire of Juror S is incomplete because many of his answers were transcribed as “inaudible.” Accordingly, it is not at all clear that Juror S gave conflicting answers. Even if he did, however, we would afford broad discretion to the trial court’s determination not to strike Juror S for cause because that determination would ultimately have turned on the court’s assessment of Juror S’s demeanor, credibility, and sincerity. See Dunlap v. People, 173 P.3d 1054, 1082 (Colo. 2007).

¶30       As to Bonvicini’s second argument, it amounts to nothing more than an assertion that he was necessarily prejudiced by the fact that he was required to exercise a peremptory challenge to excuse a juror who should have been dismissed for cause. Novotny, ¶ 27, 320 P.3d at 1203, however, expressly concluded that such an argument does not automatically establish the requisite prejudice for reversal.

¶31        I am likewise unpersuaded by Bonvicini’s contention at oral argument that had he foreseen our decision in Novotny, he would have exercised a peremptory challenge on Juror S and left Juror F on the jury, thereby establishing prejudice. In my view, such a strategy would arguably have failed under the invited error doctrine. See People v.  Wittrein, 221 P.3d 1076, 1082 (Colo. 2009) (noting that under the invited error doctrine, a party may not complain on appeal of an error that the party invited or injected into the case and that the party must abide the consequences of his or her acts); see also Novotny, ¶¶ 31, 47, 320 P.3d at 1204, 1207 (Hood, J., concurring in part and dissenting in part) (noting that the invited error doctrine would arguably preclude a defendant from contending that a biased juror sat on the jury if the defendant chose not to use a peremptory challenge to remove the juror after the trial court had denied a challenge for cause of that juror).

II. Conclusion

¶32       For these reasons, I would reverse the district court’s judgment by relying on Novotny, and I would not reach the merits of the statutory interpretation question that the People present. Accordingly, I respectfully concur in the judgment only.

I am authorized to state that JUSTICE HOOD joins in this concurrence in the judgment. 

[1] Bonvicini’s case originated in Denver County Court; we will refer to that court as the “trial court.” The District Court for the City and County of Denver then handled Bonvicini’s direct appeal; we will refer to that court as the “appellate court.”

[2] We granted certiorari to review the following issues:

1. Whether a potential juror who is a privately-paid employee of a private prison is a compensated employee of a public law enforcement agency for purposes of a challenge for cause pursuant to section 16-10-103(1)(k), C.R.S. (2015), and Crim. P. 24(b)(1)(XII).

2. Whether automatic reversal is required when the trial court erroneously denies a challenge for cause and the defendant then uses a peremptory challenge to remove the potential juror and exhausts his peremptory challenges.

[3] Bonvicini appealed three other issues in addition to the challenge for cause issue. The appellate court affirmed the trial court on those three issues, holding that the trial court did not abuse its discretion. Bonvicini does not appeal those issues here.

[4] Section 16-10-103(1) reads in its entirety as follows:

The court shall sustain a challenge for cause on one or more of the following grounds:

(a) Absence of any qualification prescribed by statute to render a person competent as a juror;

(b) Relationship within the third degree, by blood, adoption, or marriage, to a defendant or to any attorney of record or attorney engaged in the trial of the case; 

(c)Standing in the relation of guardian and ward, employer and employee, landlord and tenant, debtor and creditor, principal and agent to, or being a member of the household of, or partner in business with, or surety on any bond or obligation for any defendant;

(d) The juror is or has been a party adverse to the defendant in a civil action or has complained against or been accused by him in a criminal prosecution;

(e)The juror has served on the grand jury which returned the indictment, or on a coroner’s jury which inquired into the death of a person whose death is the subject of the indictment or information, or any other investigatory body which inquired into the facts of the crime charged;

(f) The juror was a juror at a former trial arising out of the same factual situation or involving the same defendant;

(g) The juror was a juror in a civil action against the defendant arising out of the act charged as a crime;

(h) The juror was a witness to any matter related to the crime or its prosecution;

(i) The juror occupies a fiduciary relationship to the defendant or a person alleged to have been injured by the crime or the person on whose complaint the prosecution was instituted;

(j) The existence of a state of mind in the juror evincing enmity or bias toward the defendant or the state; however, no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at trial;

(k)The juror is a compensated employee of a public law enforcement agency or a public defender’s office.

[5] This same statutory provision was at issue in Mulberger, but the core question here is different. In Mulberger we focused on the meaning of “compensated employee,” whereas in this case we must determine what constitutes a “public law enforcement agency.”

[6] Bonvicini asserts that in People v. Romero, 197 P.3d 302, 306–07 (Colo. App. 2008), the court of appeals considered a challenge for cause to a potential juror who worked for a private community corrections facility acting under the authority of the executive director of the Department of Corrections. However, in no part of its opinion did the court of appeals discuss whether the community corrections facility at which the employee worked was privately or publicly run. Therefore, Romero is of no value to our analysis of the word “public” in section 16-10-103(1)(k).