Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2019 CO 106**

**No. 18SC44,** *People v. Abu-Nantambu-El* — **Criminal Law** — **Jury** — **Structural Error.**

The supreme court affirms the judgment of the court of appeals reversing the defendant's convictions where the trial court erroneously denied the defendant's for-cause challenge to a juror under section 16-10-103(1)(k), C.R.S. (2019), the defendant exhausted his peremptory challenges, and the challenged juror ultimately served on the jury. Consistent with the principle that the erroneous denial of a challenge for cause amounts to structural error if it results in an actually biased juror serving on the jury, the supreme court holds that the erroneous seating of an impliedly biased juror is also structural error. In other words, for purposes of a criminal defendant's constitutional right to an impartial jury, a juror who is presumed by law to be biased is legally indistinguishable from an actually biased juror.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 106

### Supreme Court Case No. 18SC44
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1234

### Petitioner:

The People of the State of Colorado,

v.

### Respondent:

Abdu-Latif Kazembe Abu-Nantambu-El.

### Judgment Affirmed
*en banc*
December 23, 2019

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Jillian J. Price, Senior Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
Johnson & Klein, PLLC
Gail K. Johnson
Hillary C. Aizenman
*Boulder, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE SAMOUR** dissents.
**JUSTICE BOATRIGHT** does not participate.

¶1 This case presents a question left unanswered by our holding in *People v. Novotny*, 2014 CO 18, 320 P.3d 1194: What standard of reversal applies where a trial court erroneously denies a challenge for cause, the defendant exhausts his peremptory challenges, and the challenged juror ultimately serves on the jury? More specifically, should reversal be automatic if the challenged juror should have been excused because she was impliedly biased as a matter of law, even if she did not evince actual enmity toward the defendant?

¶2 It is clear that the erroneous denial of a challenge for cause amounts to structural error if it results in an actually biased juror serving on a jury. Consistent with that principle, we conclude that the erroneous seating of an impliedly biased juror is also structural error and requires reversal. In other words, for purposes of a criminal defendant's constitutional right to an impartial jury, a juror who is presumed by law to be biased is legally indistinguishable from an actually biased juror. Here, the trial court erroneously denied a for-cause challenge to a juror who was presumed by law to be biased under section 16-10-103(1)(k), C.R.S. (2019) (requiring the court to sustain a challenge to a potential juror who is "a compensated employee of a public law enforcement agency or a public defender's office"). The defendant exhausted his peremptory challenges, and the impliedly biased juror served on the defendant's jury. We conclude that such an error is not amenable to analysis under a harmless error standard, regardless of the juror's

actual bias, and the defendant's convictions must be reversed. Accordingly, we affirm the judgment of the court of appeals.

## I. Background

## A. Facts

¶3 Abdu-Latif Kazembe Abu-Nantambu-El forced his way into the apartment of an acquaintance, where he fatally stabbed a visitor and forced the acquaintance to clean up evidence of the crime. The prosecution subsequently charged Abu-Nantambu-El with numerous offenses, including first degree murder (after deliberation), first degree murder (felony murder), second degree murder, and two counts of first degree burglary. Abu-Nantambu-El proceeded to trial on a self-defense theory.

## B. Jury Selection and Trial

¶4 During jury selection, Juror J, a financial grant manager for the State of Colorado, said that she worked for the Colorado Division of Criminal Justice[1] but described the connection between her duties and law enforcement as, at most, tenuous:

> I am currently employed with the Colorado Division of Criminal Justice, which is housed in the Department of Public Safety. I don't feel that the division is law enforcement even though the state patrol

---

[1] Section 24-33.5-112(1)(a), C.R.S. (2019), identifies the Colorado Division of Criminal Justice as a "law enforcement agency of the state."

4

and [Colorado Bureau of Investigation] are in our department. I see state troopers down the hall because we're in the same building, but I couldn't tell you their names. That's the kind of contact I have with them. We give department, federal, Department of Justice grants out to drug treatment and criminal history records, things like that, juvenile justice crime prevention programs and drug treatment. I don't have any close relatives or friends in the law enforcement arena. I don't have any training in law enforcement.

¶5 When defense counsel asked about potential bias, Juror J indicated that she generally was not in contact with law enforcement personnel:

> JUROR J: I don't think it would be a problem because I don't work directly with law enforcement. We fund a lot of law enforcement agencies and DA's offices and things like that, but it's on different kinds of projects.
>
> . . .
>
> DEFENSE COUNSEL: Do you deal with the law enforcement agencies yourself directly?
>
> JUROR J: [I deal with their] [f]inance people.

¶6 Section 16-10-103(1) lists the grounds on which a trial court "shall" sustain a challenge to a potential juror for cause. Abu-Nantambu-El challenged Juror J under section 16-10-103(1)(k), which requires the court to sustain a challenge to a potential juror who is a "compensated employee of a public law enforcement agency or a public defender's office." The prosecution disputed the challenge, and the trial court denied it, reasoning that the Colorado Division of Criminal Justice is a multidisciplinary agency and Juror J's job duties as a financial grant manager were unrelated to law enforcement.

¶7 Abu-Nantambu-El subsequently exhausted his peremptory challenges but did not excuse Juror J, who ultimately served on the jury. Among other counts, the jury convicted Abu-Nantambu-El of first degree murder (felony murder), second degree murder, and two counts of first degree burglary.[2] The court sentenced him to life imprisonment without the possibility of parole.[3]

## C. Court of Appeals Decision

¶8 Abu-Nantambu-El appealed, arguing, as relevant here, that his constitutional right to a fair and impartial jury was violated because his jury included Juror J, who should have been excused for cause under section 16-10-103(1)(k). He contended that the error was structural. The People conceded that the trial court erred in denying the challenge for cause but argued that the proper standard of reversal was an outcome-determinative harmless error standard and that Abu-Nantambu-El's claim failed because Juror J did not evince any actual bias. Thus, the dispute on appeal was the proper standard of reversal.

---

[2] The jury also convicted Abu-Nantambu-El of third degree assault (recklessly causing injury), second degree kidnapping, tampering with physical evidence, and false imprisonment.

[3] The jury found various sentence enhancers and habitual criminal counts. Abu-Nantambu-El received consecutive sentences of life imprisonment without the possibility of parole for murder, twenty-four years for kidnapping, and six years for tampering with physical evidence. He also received a two-year sentence for third degree assault to run concurrently with his other sentences.

¶9 A divided panel of the court of appeals reversed Abu-Nantambu-El's convictions and remanded for a new trial, concluding that reversal is required where, as here, the trial court erroneously denies a challenge for cause under section 16-10-103(1)(k), the defendant exhausts his or her peremptory challenges, and the impliedly biased juror serves on the jury. *People v. Abu-Nantambu-El*, 2017 COA 154, ¶ 3, __ P.3d __. However, each judge wrote separately.

¶10 In Judge Booras's view, reversal was required because the trial court's ruling was an error in violation of an express legislative mandate in section 16-10-103(1)(k) (stating that a challenge for cause "shall" be granted). *Id.* at ¶¶ 19, 23.

¶11 Judge Freyre agreed that Abu-Nantambu-El's conviction must be reversed, concluding that the error was structural because it violated Abu-Nantambu-El's constitutional right to trial by an impartial jury. *Id.* at ¶¶ 51, 72 (Freyre, J., concurring in part and dissenting in part). Judge Freyre noted that a defendant cannot be tried fairly when a biased juror serves on the jury. *Id.* at ¶ 55. She further reasoned that there is no basis in section 16-10-103(1)(k) to differentiate between an actually biased juror and an impliedly biased juror. *Id.* at ¶ 52. Rather, she reasoned, "bias is bias." *Id.* And because the harm arising from a biased adjudicator "pervades and infects the entire framework of the trial," it constitutes structural error requiring reversal. *Id.* at ¶ 72.

¶12    Judge Webb dissented.  He rejected Judge Booras's express legislative mandate approach because section 16-10-103 is silent on the remedy for the seating of a biased juror.  *Id.* at ¶ 75 (Webb, J., dissenting).  He also dismissed Judge Freyre's structural error approach, concluding that section 16-10-103(1)(k) provides broader protection than constitutional due process requires.  *Id.* at ¶ 98. Because, in his view, the Sixth Amendment protects against the service of an impliedly biased juror "in only the most extreme of situations," *id.* at ¶ 97 (quoting *State v. Robertson*, 122 P.3d 895, 900 n.3 (Utah Ct. App. 2005)), the error did not violate Abu-Nantambu-El's constitutional rights and accordingly was not structural, *id.* at ¶ 132.  Instead, Judge Webb agreed with the People that the seating of an impliedly biased juror should be evaluated under an outcome-determinative analysis—specifically, ordinary harmless error.  *Id.* at ¶¶ 95, 132.  In reaching this conclusion, he expressed concern that requiring reversal would encourage defendants to test their luck with a jury by not exercising a peremptory strike as to a challenged juror, knowing that the conviction would be reversed on appeal if a reviewing court determined that the challenge for cause should have been granted.  *Id.* at ¶ 108.

¶13    We granted the People's petition for a writ of certiorari to review the court of appeals' decision.[4]

## II.  Legal Principles

¶14    A fair and impartial jury is a key element of a defendant's constitutional right to a fair trial under both the United States and Colorado Constitutions.  U.S. Const. amends. V, VI, XIV; Colo. Const. art. II §§ 16, 25; *see also Vigil v. People*, 2019 CO 105, ¶ 9, __ P.3d __; *People v. Russo*, 713 P.2d 356, 360 (Colo. 1986). Accordingly, seating a biased juror violates the defendant's constitutional rights. *See Nailor v. People*, 612 P.2d 79, 80 (Colo. 1980).

¶15    Our recent opinion in *Vigil* addressed some of the questions left open after *Novotny* regarding jury selection and the use of peremptory challenges.  There, we noted that, within constitutional limits, the General Assembly determines who is competent and qualified for jury service.  *Vigil*, ¶ 9; *see also People v. White*, 242 P.3d 1121, 1124 (Colo. 2010).  For instance, under the Uniform Jury Selection and Service

---

[4] We granted certiorari to review the following issues:

1. Whether a violation of section 16-10-103(1)(k), C.R.S. (2018), which does not expressly provide for dismissal as a remedy, qualifies as a violation of an express legislative mandate.

2. Whether the Sixth Amendment applies to violations of section 16-10-103(1)(k), C.R.S. (2018), which provides greater protection than that required by federal due process.

Act, §§ 13-71-101 to -145, C.R.S. (2019) ("UJSSA"), jurors must be U.S. citizens and, at the time of service, residents of the county in which they are called to serve. § 13-71-105(1), C.R.S. (2019). Further, prospective jurors "shall be disqualified" if they are under the age of eighteen; unable to read, speak, or understand English; or unable to render jury service because of a mental or physical disability. § 13-71-105(2)(a)–(c). Additionally, "prospective grand juror[s] shall be disqualified if [they] ha[ve] previously been convicted of a felony . . . ." § 13-71-105(3). Courts must "strictly enforce the provisions" of the UJSSA. § 13-71-104(4), C.R.S. (2019).

¶16 The legislature also requires a trial court, upon a party's challenge, to remove jurors when particular circumstances implicate their ability to remain impartial. *Vigil*, ¶ 11. First, section 16-10-103(1)(j) requires a trial court to excuse jurors who are actually biased. Specifically, a trial court must grant a challenge for cause to a prospective juror who "evinc[es] enmity or bias toward the defendant or the state," unless the court is "satisfied" that the prospective juror "will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." § 16-10-103(1)(j); *Vigil*, ¶ 11; *see also Morgan v. People*, 624 P.2d 1331, 1332 (Colo. 1981) (concluding that a juror was actually biased where he indicated he would have "difficulty applying the principle[] that the burden of proof rests solely upon the prosecution to establish the guilt of the accused").

10

¶17    Second, and relevant here, the legislature has determined that prospective jurors with certain relationships are impliedly biased and must be excused upon challenge.  This category includes prospective jurors who:

- have "[r]elationships within the third degree, by blood, adoption, or marriage, to a defendant or to any attorney of record or attorney engaged in the trial of the case";

- stand "in the relationship of guardian and ward, employer and employee, landlord and tenant, debtor and creditor, or principal and agent to, or being a member of the household of, or a partner in business with, or surety on any bond or obligation for any defendant";

- have "been a party adverse to the defendant in a civil action or ha[ve] complained against or been accused by him in a criminal prosecution";

- have "served on the grand jury which returned the indictment, or on a coroner's jury which inquired into the death of a person whose death is the subject of the indictment or information, or on any other investigatory body which inquired into the facts of the crime charged";

- were "juror[s] at a former trial arising out of the same factual situation or involving the same defendant";

- were "juror[s] in a civil action against the defendant arising out of the act charged as a crime";

- were "witness[es] to any matter related to the crime or its prosecution";

- "occup[y] a fiduciary relationship to the defendant or a person alleged to have been injured by the crime or the person on whose complaint the prosecution was instituted"; or

- are "compensated employee[s] of a public law enforcement agency or a public defender's office."

§ 16-10-103(1)(b)–(i), (k); *see also* Crim. P. 24(b)(1)(II)–(XII).

11

¶18     In addition to challenges for cause, the legislature has provided for peremptory challenges, which allow "both the prosecution and the defense to secure a more fair and impartial jury by enabling them to remove jurors whom they perceive as biased." *Vigil*, ¶ 19 (quoting *People v. Lefebre*, 5 P.3d 295, 303 (Colo. 2000), *overruled on other grounds by Novotny*, ¶ 27, 320 P.3d at 1203)); *see also Ross v. Oklahoma*, 487 U.S. 81, 88 (1988). Section 16-10-104, C.R.S. (2019), permits each party to exercise a certain number of peremptory challenges, depending on the circumstances of the case and nature of the charge. "The statute directs that such peremptory challenges are to be exercised 'as provided by applicable rule of criminal procedure.'" *Vigil*, ¶ 12 (quoting § 16-10-104(2)). Rule 24(d) of the Colorado Rules of Criminal Procedure provides the mechanics and timing for exercising peremptory challenges and permits the trial court to add peremptory challenges to either side, or to both sides, for good cause shown.

¶19     Within constitutional limits,[5] a party may use a peremptory challenge to remove a prospective juror without specifying a reason or for no reason at all. *Novotny*, ¶ 10, 320 P.3d at 1198. "[A] principle reason for permitting peremptory

---

[5] A party may not, for example, exercise a peremptory challenge to remove a juror because of race or gender. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (race); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146 (1994) (gender).

challenges has always been to help secure the constitutional guarantee of trial by an impartial jury." *Vigil*, ¶ 16. But although peremptory challenges allow litigants to assist the court in the selection of a constitutionally required fair and impartial jury, the U.S. Supreme Court has made clear that "exercising the authorized number of peremptory challenges is all that the parties are entitled to by the rule," *id.* at ¶¶ 16, 18–19 (citing *United States v. Martinez-Salazar*, 528 U.S. 304, 314–16 (2000)), and that "the mistaken denial of a state-provided peremptory challenge does not, without more, violate the federal constitution," *id.* at ¶ 16 (citing *Rivera v. Illinois*, 556 U.S. 148, 158 (2009)).

¶20 That is, where a defendant is compelled to use a peremptory challenge to correct a trial court's erroneous failure to dismiss a juror for cause, so long as the defendant receives both an impartial jury and the number of peremptory challenges specified by state statute, the defendant's constitutional rights remain unaffected. *See id.*

¶21 Such was the case in *Novotny*. There, the trial court erroneously denied the defendant's challenge for cause under section 16-10-103(1)(k) to a potential juror who worked as an assistant attorney general. The defendant subsequently exercised a peremptory challenge to excuse the juror. *Novotny*, ¶ 1, 320 P.3d at 1196. We identified three potential standards of reversal: (1) structural error requiring automatic reversal; (2) error requiring reversal for violation of an express

legislative mandate; and (3) trial error requiring reversal under an outcome-determinative analysis only if the error was not harmless. *Id.* at ¶ 27, 320 P.3d at 1203.

¶22 In *Novotny*, we focused on the jurisprudential developments in the understanding of trial error and structural error that followed our 1992 decision in *People v. Macrander*, 828 P.2d 234 (Colo. 1992), which held that reversal is automatic where a trial court erroneously denies a challenge for cause, 828 P.2d at 243. We noted that the distinction between "trial error, which can be harmless, and structural error, which cannot, was . . . in its infancy" when we decided *Macrander*. *Novotny*, ¶ 18, 320 P.3d at 1200. But in the decades that followed, the understanding of harmless error and structural error "developed so as to substantially erode the premises upon which [*Macrander*] rest[ed]." *Id.* at ¶ 17, 320 P.3d at 1200. In that time, the Supreme Court confined structural error to a "limited class of fundamental constitutional error[s] [that] could 'defy analysis by "harmless error" standards.'" *Id.* at ¶ 20, 320 P.3d at 1201 (quoting *Neder v. United States*, 527 U.S. 1, 7 (1999)). We also observed that the Supreme Court had rejected the notion that peremptory challenges are of constitutional dimension. *Id.* at ¶ 22, 320 P.3d at 1201 (citing *Ross*, 487 U.S. at 88). We therefore reasoned that a defendant does not suffer constitutional harm merely by being deprived of a statutorily granted peremptory challenge as a result of a court's good-faith error.

14

*Id.* at ¶ 23, 320 P.3d at 1202. Rather, in light of legal developments after *Macrander*, we held that error that results in no more than the loss of a statutorily granted peremptory challenge is not structural error. *Id.* In so holding, we overruled our earlier decision in *Macrander*. *Id.* at ¶ 27, 320 P.3d at 1203. Notably, while we did "not imply . . . that every violation of our statutes and rules prescribing the use of peremptory challenges must be disregarded as harmless," we held that a reviewing court should apply "the proper outcome-determinative test" when analyzing an error that merely deprived the defendant of a peremptory challenge, "as distinguished from an actual Sixth Amendment violation." *Id.* at ¶¶ 23, 27, 320 P.3d at 1202–03.

### III. Analysis

¶23 Our decision in *Novotny* left open the question of what standard of reversal applies when a trial court erroneously denies a challenge for cause and the impliedly biased juror ultimately serves on the jury. That is the situation before us now.

¶24 We first conclude that a violation of section 16-10-103(1)(k) does not require reversal under an express legislative mandate. In *Novotny*, we gave two examples of express legislative mandates requiring reversal. ¶ 26, 320 P.3d at 1203. The first was *Zedner v. United States*, 547 U.S. 489, 507 (2006). There, the Supreme Court declined to apply harmless error analysis to a violation of a federal speedy trial

statute, which mandated that "[w]hen a trial is not commenced within the prescribed period of time, 'the information or indictment *shall be dismissed* on motion of the defendant.'" *Id.* at 508 (quoting 18 U.S.C. § 3162(a)(2) (2000)). The Court reasoned that to excuse the error as harmless "would be inconsistent with the strategy embodied" in the statute. *Id.* at 509. The second example we pointed to was Colorado's speedy trial statute, section 18-1-405(1), C.R.S. (2019). Like the federal statute at issue in *Zedner*, section 18-1-405(1) states that

> [e]xcept as otherwise provided in this section, if a defendant is not brought to trial on the issues raised by the complaint . . . within six months from the date of the entry of a plea of not guilty, he *shall be discharged* from custody . . . , the pending charges *shall be dismissed*, and the defendant *shall not again be indicted, informed against, or committed* for the same offense . . . .

(Emphases added.)

¶25    Section 16-10-103(1)(k), by contrast, is silent on the remedy for a violation. Absent any indication that the statute dictates a particular remedy, we cannot conclude that a violation of section 16-10-103(1)(k) is a violation of an express legislative mandate.

¶26    But that still leaves the question of whether a violation of section 16-10-103(1)(k) implicates the Sixth Amendment.

¶27    Certain constitutional rights are so basic to a fair trial that their violation can never be harmless. *Gray v. Mississippi*, 481 U.S. 648, 668 (1987). Among these is a

16

defendant's Sixth Amendment right to "an impartial adjudicator, be it judge or jury." *Id.*

¶28 Accordingly, the Supreme Court has held that when an actually biased juror sits on the jury, the resulting violation of the defendant's constitutional right to an impartial jury requires reversal. *Martinez-Salazar*, 528 U.S. at 316 ("Nor did the District Court's ruling result in the seating of any juror who should have been dismissed for cause. As we have recognized, that circumstance would require reversal."); *cf. Ross*, 487 U.S. at 85 ("Had [the biased juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove [the juror] for cause, the sentence would have to be overturned.").

¶29 Our own decisions have likewise established that "if the jury included a biased juror, then the defendant's right to a fair trial was violated and his convictions must therefore be reversed." *Morrison v. People*, 19 P.3d 668, 670 (Colo. 2000) (analyzing whether the juror in question was actually biased under section 16-10-103(1)(j)).

¶30 As Judge Freyre observed in her opinion below, the harm arising from a biased adjudicator "pervades and infects the entire framework of the trial," such that it defies analysis by harmless error standards. *Abu-Nantambu-El*, ¶ 72 (Freyre, J., concurring in part and dissenting in part). Thus, if a trial court error results in

17

the seating of a juror who is actually biased against the defendant, the defendant's right to an impartial jury is violated, the error is structural, and reversal is required. *See Martinez-Salazar*, 528 U.S. at 316; *Ross*, 487 U.S. at 85; *Morrison*, 19 P.3d at 670.

¶31 The dispute in this case is whether jurors who are presumed by law to be biased under section 16-10-103(1)(k) are legally distinguishable from jurors who are actually biased under section 16-10-103(1)(j). We conclude that they are not.

¶32 We see no grounds in the statutory framework for drawing such a line. The plain language of section 16-10-103(1) makes no distinction between potential jurors who evince actual bias and those who are conclusively presumed by law to be biased. Further, to apply harmless error review and require a showing of actual bias where an impliedly biased juror sits would render section 16-10-103(1)(k) redundant: Why require a trial court to grant challenges to jurors based on statutorily implied bias if such jurors must be actually biased? Such jurors would be disqualified anyway under section 16-10-103(1)(j).

¶33 Rather, the General Assembly has identified certain jurors whose bias is implied as a matter of law and has required trial courts to excuse such jurors when a party challenges them for cause. *People v. Bonvicini*, 2016 CO 11, ¶ 10, 366 P.3d 151, 154–55. Nothing in section 16-10-103(1) suggests that the presumption of bias for such jurors is rebuttable. In other words, an impliedly biased juror "is not

18

susceptible to rehabilitation through further questioning because implied bias, once established, cannot be ameliorated by the juror's assurances that she nonetheless can be fair." *Lefebre*, 5 P.3d at 300.

¶34 Accordingly, by enacting section 16-10-103(1)(k), the General Assembly has determined that compensated employees of public law enforcement agencies and public defender's offices cannot serve as jurors if they are challenged because "one who is employed by a law enforcement agency will favor, or will be perceived to favor, the prosecution side of a criminal case," *Ma v. People*, 121 P.3d 205, 210 (Colo. 2005), and a "compensated employee of a public defender's office will favor, or will be perceived to favor, the defendant," *Mulberger v. People*, 2016 CO 10, ¶ 12, 366 P.3d 143, 147.

¶35 In determining that these potential jurors are subject to dismissal for cause, Colorado has been more protective of a defendant's right to a jury free of implied bias than the federal courts or other jurisdictions without a comparable statute.[6] We are not free to alter the General Assembly's legislative judgment about the

---

[6] *E.g.*, *State v. Benedict*, 148 A.3d 1044, 1050–51 (Conn. 2016) (concluding that an active police officer's service on a jury, standing alone, did not violate the defendant's constitutional rights where the state had no statute or common-law rule to that effect); *see also United States v. Mitchell*, 690 F.3d 137, 149–50 (3d Cir. 2012) (declining to categorically impute bias to co-workers of key witnesses where no controlling authority presumed such bias).

types of relationships that carry significant risk of actual bias or the appearance of bias, nor may we read a distinction into the statute that does not exist. *See Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo. 1994) (noting that a court "will not judicially legislate by reading a statute to accomplish something the plain language does not suggest"). Unlike those jurisdictions without a comparable statute, we therefore do not undertake a case-by-case analysis to see whether the implied bias of a juror necessitates granting a challenge for cause. *Cf. State v. Benedict*, 148 A.3d 1044, 1051 (Conn. 2016) (in the absence of a statute or common-law rule that an impliedly biased juror must be excused, the "circumstances of [the] particular case" determine whether the juror should be excused because bias is likely). Rather, jurors who fall under section 16-10-103(1)(k) are conclusively presumed to be biased as a matter of law.

¶36 We do not suggest that the service of a juror employed by law enforcement or the public defender's office necessarily violates a defendant's Sixth Amendment right to an impartial jury in the absence of section 16-10-103(1)(k). Nor do we suggest that the General Assembly could not, should it wish to do so, amend this provision to narrow its scope or repeal it altogether. However, where the General Assembly has exercised its legislative authority to determine that certain relationships render a potential juror impliedly biased as a matter of law, we are bound by that legislative determination. The result of that determination is that

20

the juror is deemed as a matter of law to be biased, period. Accordingly, a trial court's erroneous denial of a challenge for cause to such a juror requires reversal if that impliedly biased juror sits on a defendant's jury.

¶37 We are unpersuaded that the remedy of automatic reversal in these circumstances will encourage gamesmanship by incentivizing defense counsel to fail to challenge a juror for cause based on implied bias. The plain language of section 16-10-103(1) requires defense counsel to challenge an allegedly biased juror to preserve the issue for appellate review; a trial judge is not required to excuse a prospective juror sua sponte. *See People v. Coney*, 98 P.3d 930, 934 (Colo. App. 2004).

¶38 As the Supreme Court observed in *Martinez-Salazar*, "[c]hallenges for cause and rulings upon them . . . are fast paced, made on the spot and under pressure." 528 U.S. at 316. Counsel under these circumstances have little time for gamesmanship. *See id.*; *cf. Bondsteel v. People*, 2019 CO 26, ¶ 28, 439 P.3d 847, 852 ("The assumption that any competent attorney would withhold a meritorious argument at trial in the hope of having something to argue on appeal if the trial goes badly belies reality."). Moreover, nothing prevents the prosecution from

using a peremptory challenge to remove a juror who should have been excused for cause.[7]

## IV. Conclusion

¶39 In sum, because the trial court erroneously denied a for-cause challenge to a juror who was presumed by law to be biased under section 16-10-103(1)(k), the defendant exhausted his peremptory challenges, and the impliedly biased juror served on the defendant's jury, the error is structural, and Abu-Nantambu-El's convictions must be reversed. We therefore affirm the judgment of the court of appeals.

**JUSTICE SAMOUR** dissents.

---

[7] This case does not present the question of whether Abu-Nantambu-El waived appellate review of his claim or invited any error. The People do not argue that any error was invited, nor does the record suggest that defense counsel purposely failed to use a peremptory challenge to remove Juror J. *See People v. Garcia*, 2018 COA 180, ¶ 14, 446 P.3d 922, 926. We therefore do not opine on what the result would be had Abu-Nantambu-El not exhausted his peremptory challenges or the record suggested that defense counsel invited the error.

JUSTICE SAMOUR, dissenting.

¶40 The majority throws out Abu-Nantambu-El's multiple convictions (including for first degree murder, assault, and burglary), invalidates his adjudication as a habitual criminal, and vacates his sentence to life imprisonment without the possibility of parole. Of course, an appellate court must sometimes take such actions to address an error in a jury trial. In this case, though, the majority does so based solely on the trial court's denial of Abu-Nantambu-El's challenge for cause with respect to Juror J, a juror Abu-Nantambu-El subsequently chose not to excuse with one of his twelve peremptory challenges. If, notwithstanding Juror J's employment as a financial grant manager in the criminal justice division of the Department of Public Safety, Abu-Nantambu-El decided not to excuse her, why should we automatically reverse? Because I believe that the appellate claim was waived or that the error was invited, and because I disagree with the analytical framework the majority adopts, I cannot join the decision to automatically reverse. I therefore respectfully dissent.

¶41 In *People v. Novotny*, 2014 CO 18, 320 P.3d 1194, this court adopted a "case specific, outcome-determinative analysis," which requires a defendant to show prejudice to obtain reversal based on the trial court's erroneous denial of his challenge for cause. *Id*. at ¶¶ 2, 27, 320 P.3d at 1196, 1203. Since Novotny had exercised a peremptory challenge to excuse the prospective juror the trial court

1

had mistakenly failed to excuse pursuant to his challenge for cause, we concluded that automatic reversal was not warranted. *Id.*

¶42 Here, it is undisputed that the trial court erred in denying Abu-Nantambu-El's challenge for cause with respect to Juror J. As the majority notes, Juror J was a compensated employee of a public law enforcement agency and was thus impliedly biased as a matter of law. Maj. op. ¶ 2. But Abu-Nantambu-El avoids Novotny's fate because, unlike Novotny, he elected not to use one of his peremptory challenges to excuse the impliedly biased juror as to whom his challenge for cause was incorrectly denied. In other words, whereas we refrained from automatically reversing Novotny's convictions because he excused the problematic prospective juror with one of his peremptory challenges, the majority automatically reverses Abu-Nantambu-El's convictions because he left the problematic prospective juror on his jury. This feels counterintuitive to me.

¶43 I cannot join my colleagues in the majority because I don't believe reversal is justified where, as here, a defendant complains on appeal about an impliedly biased juror he chose to keep on his jury despite having twelve opportunities to excuse her. In its analysis, the majority focuses on whether Juror J ended up serving on the jury and whether Abu-Nantambu-El exhausted his peremptory challenges on other prospective jurors. I don't think it's that simple.

2

¶44 The majority fails to consider one of the two reasons why Juror J served on this jury. True, had the trial court granted Abu-Nantambu-El's challenge for cause as to Juror J, as it should have, then Juror J would not have served. However, there is a second reason why Juror J served: Abu-Nantambu-El thereafter decided not to excuse her with one of his twelve peremptory challenges. To my mind, this is a classic example of waiver or invited error: After arguing that Juror J was biased and should not be allowed to serve, Abu-Nantambu-El turned around and elected not to excuse her with one of his twelve peremptory challenges. The doctrine of waiver precludes appellate review of an intentionally relinquished known right or privilege. *People v. Rediger*, 2018 CO 32, ¶¶ 39–40, 416 P.3d 893, 902. The invited error doctrine prevents a party from complaining on appeal about an error that the party either invited or injected into the proceedings. *People v. Wittrein*, 221 P.3d 1076, 1082 (Colo. 2009).

¶45 In his partially dissenting opinion in *Novotny*, my colleague, Justice Hood, anticipated the situation we confront today. *Novotny*, ¶ 31, 320 P.3d at 1204 (Hood, J., concurring in part and dissenting in part). Justice Hood concluded that, following the incorrect denial of a defendant's challenge for cause, "if the defendant chooses not to use a peremptory" challenge to excuse the biased juror, "any error is arguably invited and not reviewable on appeal." *Id.* Although acknowledging that the Supreme Court's opinion in *United States v.*

3

*Martinez-Salazar*, 538 U.S. 304 (2000), contains language suggesting that the approach taken by defense counsel here may be acceptable, Justice Hood was quick to stress that "under Colorado law . . . such an approach . . . arguably raises the specter of invited error, which precludes appellate review of any error the defendant 'invited or injected into the case.'" *Novotny*, ¶ 47, 320 P.3d at 1206–07 (quoting *Wittrein*, 221 P.3d at 1082) (Hood, J., concurring in part and dissenting in part).[1]

¶46 Another colleague, Justice Gabriel, reached a similar conclusion in his opinion concurring in the judgment in *People v. Bonvicini*, 2016 CO 11, 366 P.3d 151 (Gabriel, J., concurring in the judgment), which Justice Hood joined. *Id.* at ¶ 31, 366 P.3d at 159. There, Justices Gabriel and Hood found unpersuasive the defendant's contention that, had he foreseen our decision in *Novotny*, he would have left on the jury the biased juror the trial court had refused to excuse for cause.

---

[1] *Morrison v. People*, 19 P.3d 668 (Colo. 2000), contains dicta similar to that in *Martinez-Salazar*. *See id*. at 670. But, like Justice Hood, I don't see the invited error question as settled under Colorado law. Neither, apparently, does Justice Gabriel. *See infra* at ¶ 7.

*Id.* They aptly observed that "such a strategy would arguably have failed under the invited error doctrine."[2] *Id.*

¶47    Yet, the majority essentially ignores the elephant in the room. It mentions the waiver and invited error doctrines—almost as an afterthought—in the last footnote on the very last page of its opinion. The majority simply says, in conclusory fashion, that the record before us does not suggest that Abu-Nantambu-El invited the error or "purposely" left Juror J on the jury. Maj. op. ¶ 38 n.7. I beg to differ.

¶48    To be sure, the majority's position is consistent with Abu-Nantambu-El's contention during oral argument that he did not use a peremptory challenge on Juror J because there were other prospective jurors who were more concerning to him. But the record belies this claim.

---

[2] Justice Scalia likewise suspected that this tactic would be prohibited under principles of waiver or, more fundamentally, the principle that a party cannot complain about an error that he, himself, allows. *Martinez-Salazar*, 528 U.S. at 318 (Scalia, J., concurring in the judgment). In his alternate opinion in *Martinez-Salazar*, Justice Scalia pointed out that he "would not find it easy to overturn a conviction where, to take an extreme example, a defendant had plenty of peremptories left but chose instead to allow . . . a person to whom he had registered an objection for cause, and whose presence he believed would nullify any conviction," to serve on the jury. *Id.* at 318–19.

¶49 First, Abu-Nantambu-El was allotted twelve peremptory challenges in this case because he was charged with first degree murder. That's twice the number of peremptory challenges defendants are given in most felony trials. Second, only one of the twelve prospective jurors Abu-Nantambu-El excused with peremptory challenges had been previously challenged by him for cause. I find it unpersuasive that each of the remaining eleven prospective jurors was somehow more concerning to Abu-Nantambu-El than Juror J, even though Abu-Nantambu-El challenged Juror J, but not any of those eleven, for cause. And finally, Abu-Nantambu-El did not ask for an additional peremptory challenge. As the majority acknowledges, Rule 24(d)(3) of the Colorado Rules of Criminal Procedure allows the trial court to give additional peremptory challenges to either side, or to both sides, for good cause shown. *Id*. at ¶ 18. If, as Abu-Nantambu-El asserts now, the only reason he did not exercise a peremptory challenge on Juror J is that the twelve prospective jurors he peremptorily excused were more troublesome than Juror J, he presumably would have asked the trial court for another peremptory challenge. At a minimum, he would have attempted to establish good cause to obtain an additional peremptory challenge pursuant to Rule 24(d)(3).

¶50 This record compels the conclusion that Abu-Nantambu-El waived his appellate claim or invited the error. Indeed, if this record doesn't show the intentional relinquishment of a known right or the invitation of an error, I don't

6

know what jury selection record will.[3]   I would therefore hold that Abu-Nantambu-El is precluded from obtaining relief on appeal.[4]

¶51   Surprisingly, the majority declares that it is not worried that today's decision will lead to "gamesmanship." *Id.* at ¶¶ 36–37.  But that strikes me as little more than whistling past the graveyard.  The majority should be worried about gamesmanship given the system it sets up today.

---

[3] Given today's decision, the record is likely to be the same in all future cases: It will show that the defendant exhausted his peremptory challenges and did not exercise one of them on the prospective juror in question.  Thus, if the record in front of us doesn't suffice for waiver or invited error, it is unlikely that any record will.

[4] The Attorney General does not urge us to find that the appellate claim was waived or that the error was invited, apparently because *Novotny* was not yet on the books when Abu-Nantambu-El's trial took place.  *See People v. Abu-Nantambu-El*, 2017 COA 154, ¶ 109 n.3, __ P.3d __, __ n.3 (Webb, J., dissenting).  This position is a head-scratcher.  Whether there was waiver or invited error is not tethered to the timing of our *Novotny* opinion.  The point is not that Abu-Nantambu-El opted to forego peremptorily challenging Juror J to circumvent *Novotny*.  Rather, the point is that Abu-Nantambu-El waived his claim or invited the error by purposely allowing Juror J to serve on the jury despite having twelve peremptory challenges available, exercising all of them on other prospective jurors (only one of whom he had challenged for cause), and failing to ask for an extra peremptory challenge.  The waiver and invited error doctrines were certainly around before we decided *Novotny*.  In any event, regardless of the Attorney General's flawed presupposition, the majority does not cabin today's ruling to trials that preceded *Novotny*.  And, as mentioned, the majority concludes that the record before us does not suggest that Abu-Nantambu-El invited the error or purposely left Juror J on the jury.  *See* maj. op. ¶ 38 n.7.  Hence, I feel compelled to address the waiver/invited error question.

¶52 To be clear, I don't fault defense counsel; they must operate within the analytical framework our court has established. I place the blame at the feet of our court. The rules we have instituted incentivize gamesmanship: If, after the incorrect denial of a challenge for cause, a defendant exercises a peremptory challenge on the prospective juror in question, the error will be harmless; but if, in the same situation, the defendant exhausts his peremptory challenges but does not exercise one of them on that prospective juror, there will be an automatic reversal in the event of a conviction.[5]

¶53 So, is there a better approach? After all, if a defendant like Novotny loses on the ground of lack of prejudice and a defendant like Abu-Nantambu-El loses based on waiver or invited error, defendants would always lose. And that's not fair.

¶54 Here's what I would propose. I would rely on the provision in Rule 24(d)(3) that permits requests for additional peremptory challenges. I would then encourage our trial court judges to grant a defendant's request for an additional peremptory challenge whenever they deny a colorable challenge for cause—i.e.,

---

[5] The majority's analytical framework may also unfairly place defense counsel in an ethical catch-22. *See Novotny*, ¶ 47, 320 P.3d at 1207 (Hood, J., concurring in part and dissenting in part).

8

one that is difficult to resolve and presents a close call.[6]  The defendant can then use that extra peremptory challenge on the prospective juror in question.  If an appellate court later determines that the challenge for cause was mistakenly denied, there would not be an issue because the defendant either would have excused the prospective juror with the additional peremptory challenge or, in the event he elected not to do so, would be barred from raising the claim by waiver or invited error.  Of course, automatic reversal would still be warranted if the trial court denied the defendant's request for an additional peremptory challenge — the waiver and invited error doctrines would not apply in such a case based on the defendant's attempt to obtain an additional peremptory challenge.

¶55    This methodology would have the added benefit of disincentivizing the prosecution from opposing colorable challenges for cause.  And it would give trial court judges some comfort in knowing that the additional peremptory challenge could cure the erroneous denial of such a challenge for cause.[7]  It is worth pointing

---

[6] In my experience, it is rare to have more than one such challenge for cause come up in a single trial.  But the rule allows the trial court to grant the defendant more than one additional peremptory challenge if appropriate.

[7] Even after today's decision, trial court judges would do well to offer a defendant an additional peremptory challenge after denying a colorable challenge for cause. In my view, denial of such a challenge for cause would constitute good cause within the meaning of Rule 24(d)(3).

out that ruling on a colorable challenge for cause is among a trial court judge's most difficult tasks. These decisions have to be made in the moment, on the bench, with little time for research or contemplation, and often in a courtroom full of individuals summoned for jury service who loathe delays.[8]

¶56 Because I believe the majority errs in failing to conclude that Abu-Nantambu-El waived the appellate claim or invited the error here, and because I cannot in good conscience support the system the majority sets up today, I do not join in its opinion. Inasmuch as I don't see a reason to overturn Abu-Nantambu-El's convictions, invalidate his habitual criminal adjudication, and vacate his life sentence, I would reverse the judgment of the court of appeals. Accordingly, I respectfully dissent.

---

[8] As our jurisprudence reflects, trying to discern whether a prospective juror is a compensated employee of a public law enforcement agency under section 16-10-103(1)(k), C.R.S. (2019), can be particularly daunting even for an appellate court with ample time to research and analyze the issue. *See, e.g.*, *Ma v. People*, 121 P.3d 205, 214 (Colo. 2005) (Coats, C.J., dissenting) (observing that the majority's conclusion that the prospective juror at issue was a compensated employee of a public law enforcement agency "betray[ed] a fundamental lack of appreciation for military organization and command structure by classifying the military police corps, or branch, as such an agency"). Indeed, it is no coincidence that this is the ground that proved to be tricky for the trial court in *Novotny* and now rears its ugly head in this case.